## In re WALKER et al.

## In re D. A. SCHULTE, Inc.
### No. 82.

Circuit Court of Appeals, Second Circuit.
Dec. 6, 1937.

Jerome Eisner and Ernst, Gale, Bernays & Falk, all of New York City (Henry I. Fillman, of New York City, of counsel), for appellant.

William A. Kirk, of New York City (William A. Kirk and James A. Gill, both of New York City, of counsel) for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L..HAND, Circuit Judge.

The debtor appeals from an order in a reörganization proceeding under section 77B of the Bankruptcy Act, as amended (11 U.S.C.A. § 207 and note) directing it to surrender a parcel of leased real property in the City of New York, for forfeiture of the term upon which it was held. The facts are as follows. On April 8, 1920 the claimants' testator let the locus in quo to the debtor for a term of years at varying rents, payable monthly in advance: $1,250 from October 1st, 1931 to September 30, 1936, and $1,333.33 from October 1, 1936 forward. The lease contained conditions subsequent upon which the lessor might reënter, as follows: (1) assignment without written consent; (2) devolution of title to the term by operation of law; (3) insolvency of the lessee; (4) proceedings in bankruptcy brought by or against it; (5) a judgment, execution, or attachment; (6) the appointment of a receiver. The debtor sublet a part of the premises at a rent equal to that reserved for the whole parcel, and so was able to occupy the remainder without cost to itself. It defaulted however upon the rent due on June 1, 1936, and on June 3d it filed a petition for reörganization under section 77B, as amended (11 U.S.C.A. § 207 and note), which, although it showed assets in excess of its liabilities, alleged that it was not able to meet its obligations as they matured. The court approved this petition on the same day, and temporarily continued the debtor in possession under subdivision (c) (11) of section 77B, 11 U.S.C.A. § 207 (c) (11). On June 5th notice was served on the present claimants, whom it will be simpler to speak of as lessors, declaring that the debtor had filed the petition, had been put temporarily in possession by the court, that it reserved the disposition of all unexpired leases pending further order, and that its policy would be to keep all sub-rents in a special account, and in cases where it ultimately rejected a lease, to pay to the lessor the reasonable value of use and occupation of the portions occupied by it, and to dispose of the sub-rents as the court might direct. On June 17th it paid $1,250 to the debtor without comment, and the same amount on July 7th, accompanying that payment with a letter advising the lessors that the court had determined to continue it in possession permanently (as the court had in fact done by order entered June 30), and that it enclosed a check for $1,250 "for the month of July," as it had done "for the month of June." On August 10th and on September 3d it again paid $1,250 without further comment. Meanwhile the sub-lessee had been regularly paying its rents, which the debtor deposited in a separate account, but which it did not use for its payments to the lessors.

On October 1st, 1936, the lessors petitioned the court either to lift the injunction against their evicting the debtor, or to direct it to surrender possession of the premises. They alleged that it had forfeited the term because, (1), the reorganization proceeding was one in bankruptcy, (2), because the term had devolved by operation of law upon the debtor in a new capacity; (3), because it had become insolvent; (4), because proceedings in bankruptcy had been instituted against it; and (5), because a receiver had been appointed of its property. On October 7th the debtor paid $1,333.33, again without comment. The lessors' petition was referred to the referee as special master, who reported on November 12th that the lessors had lost any power to forfeit the term which they might have had, by accepting the payments recited above, that being consistent only with the continued existence of the lease. Upon petition to review, the judge reversed the special master, holding that the term had been forfeited, that the payments were not to be considered as rent, and that they did not therefore toll the reëntry. The debtor appealed.

We think that the filing of the petition and the first order continuing the debtor in possession were each a breach of a condition subsequent imposed upon the term, and entitled the lessors to reënter. The insolvency mentioned in the lease cannot have been other than a failure to meet the lessee's obligations as they matured; that is the insolvency which throws the lessor's relations into confusion, delays payment of the rent, impounds his property for an indefinite time, and in general makes it important for him to be free to reënter. We do not forget that we have held that the putative lien of the lessor upon subrents (assuming that the courts of New York would follow Otis v. Conway, 114 N.Y. 13, 20 N.E. 628), presupposes insufficiency of assets and not mere failure to pay in due course. Central Manhattan Properties v. D. A. Schulte (C.C.A.) 91 F.2d 728, 730. But the reasons for a distinction between that situation and this are apparent, and the meaning of the word, "insolvency," is not constant, but rather takes its color from its context. Again, we think that the order continuing the debtor in possession made it a receiver within the meaning of that condition of the lease. We do not impute a new and fictitious personality to the debtor, such for example as would satisfy the condition relating to a devolution of title, and it is not necessary to do so; but the purpose of subdivision (c) (11), 11 U.S.C.A. § 207 (c) (11), is certainly that the debtor shall be in fact a trustee, if the judge thinks best; otherwise an independent trustee is inevitable, since the court must in some fashion control the property. If so, the difference between making the debtor a trustee and formally appointing it receiver seems to us merely verbal. Since there were, therefore, two breaches of conditions subsequent, it is not necessary to decide whether the filing of a reörganization petition commenced a "proceeding in bankruptcy"; in any event the term was at an end if the lessors chose to reënter.

A more troublesome question is as to their "waiver" of these breaches by accepting the payments made after the reörganization proceeding was commenced. We decided in Model Dairy Co. v. Foltis-Fischer, Inc. (C.C.A.) 67 F.2d 704, that payments by a receiver for use and occupation do not toll the lessor's right of reënter; they are not payments of rent, that is of money due under the lease; and unless they are, their acceptance by the lessor does not recognize the continued existence of the term. The court imposes them as an equitable quid pro quo for the possession which it seizes, ousting the lessee and holding off the lessor, who could otherwise reënter; and the lessor may therefore keep them, even though eventually the bar against him is lifted and he reenters. Indeed in New York he may, in the action of ejectment itself, recover for use and occupation up to the entry of judgment, and, we assume, thereafter and until possession is restored. Willis v. McKinnon, 178 N.Y. 451, 70 N.E. 962. Nor can we see that the situation changes where there is no receiver, but a debtor is continued in possession under subdivision (c) (11) of section 77B, 11 U.S.C.A. § 207 (c) (11). Such a debtor does not pay as lessee; it may not do so, it is forbidden to affirm the lease without order of the court, and the payment of rent as rent would be as much an affirmance, if lawful, as is the lessor's acceptance. Its position as debtor, "continued in possession," is for all practical purposes that of a trustee or receiver, as we have said.

This would dispose of the case, if the sums had been paid at the end of each month to which they were applicable; and the same would be true, if though paid earlier, they had been paid and accepted for use and occupation over the whole month. Neither was true, the payments were made early in the month, and though each was made "for the month," they were not stated to be for use and occupation. Moreover, the rent, stricti juris, was payable in advance. The question is how we shall interpret the intent of the parties from these facts; in so doing we shall assume without deciding, that, although the debtor, as trustee, was not authorized to pay any rent, if the lessors in fact received the payments as rent, it would toll their reëntry. The debtor has the burden and we start with the fact that the payments could not be rent. For this reason it is fair to demand plain evidence that they were intended to be what they were not. Certainly they might have been payment for use and occupation, though made in advance; for, although it was irregular for the debtor, as trustee, to pay in advance without order, it was not so serious as to pay rent without an order, for rent could not possibly become due until affrmance. Moreover, though the payment was in advance, it was only for a short time, at most less than four weeks, and all of

it was sure to become due anyway, except so much as the lessors might not earn if they got possession within the month. It was extremely unlikely that they could do so; the term was a valuable asset, the lessors' title to it was disputed, and the debtor, if unsuccessful before the referee to whom all such matters were referred, would surely go at least to the district judge. That a proceeding to evict should end within the month was scarcely more than an imaginary possibility. Therefore, the parties cannot be said to have given a color to their conduct contrary to the truth; the material is not at hand to fabricate the equivalent of a declaration that the payments were received as rent. That being true, we must read the transactions as they really were. Fisher v. Columbia National Bank, 54 Ind.App. 558, 103 N.E. 119.

Order affirmed.