354 F.2d 946
 Carlisle DAVIDSON and Frank O. Fredericks, Petitioners-Appellants,
v.
Lazarus Joseph and David I. SHIVITZ, Trustees-Appellees.
In the Matter of The SIRE PLAN MANAGEMENT CORP. et al., Debtors.
 No. 6, Docket 29563.
 United States Court of Appeals Second Circuit.
 Argued Sept. 22, 1965.
Decided Jan. 20, 1966.
 
 Lawrence W. Pollack, Frank & Fredericks, New York City, for petitioners-appellants.
 Charles Seligson, Harvey R. Miller, New York City, for trustees-appellees.
 Philip A. Loomis, Jr., General Counsel, David Ferber, Sol., Richard M. Phillips, Special Counsel, Robert W. Cox, Attorney, Washington, D.C., for Securities and Exchange Commission, Richard V. Bandler, Asst. Regional Administrator, Securities and Exchange Commission, New York City.
 Before MOORE, SMITH and ANDERSON, Circuit Judges.
 SMITH, Circuit Judge:
 
 
 1
 In Chapter X reorganization proceedings in the United States District Court for the Southern District of New York, of five affiliated corporations, trustees for fractional interest holders of the fee in certain real properties sought orders of possession on the ground that the leases of the debtors as tenants were terminated under a bankruptcy, insolvency and reorganization provision of the leases. The Court, Sidney Sugarman, District Judge, denied the petition for surrender, and the trustees for the fractional interest holders of the fee, appeal. We find no error and affirm the judgment denying surrender.
 
 
 2
 Sire Plan companies, now under reorganization and represented by trustees-appellees, formerly controlled by one Mintzer, were tenants in many properties owned by the fractional interest holders, members of the public whose capital contributions had been arranged by the companies, as a means of syndication of Mintzer's real estate ventures. The holders were represented by an Indenture Trustee, Davidson, who took title to the properties from their former owners and conveyed to the holders by quit-claim deed, subject to the Trust Indenture. The companies then leased and managed the properties, which were mortgaged. The companies subsequently issued notes to raise money, and Davidson became trustee also for the noteholders, and as such held all stock in the companies. Davidson was inactive and allowed Mintzer to mismanage the ventures. On December 27, 1962, after considerable pressure for action, Davidson, voting the stock, ousted Mintzer, as the companies were near collapse, and there was danger that the mortgages would be foreclosed. In February and March, 1963, Davidson, as president of the companies, after a brief state court receivership, petitioned for reorganization under Chapter X. The leases contained a termination clause for insolvency, bankruptcy, filing, etc. Trustees were appointed in the proceeding, managed the properties, applied the proceeds to payment of arrearages and staved off foreclosure.
 
 
 3
 Davidson knew that under the terms of the leases, he as indenture trustee, had the right to terminate the leases on three days notice to the prime tenant. The financial circumstances connected with the leased properties were apparently in a shambles in that taxes had not been paid, there were threats of mortgage foreclosures and other circumstances which were prejudicial to the interest of the fractional interest owners. Davidson for some time left it to the reorganization trustees to straighten out the financial difficulties for the benefit of the fractional interest holders and to manage the properties for their benefit. He was abundantly satisfied with their handling of the matters and so advised the fractional interest holders. Davidson's principal concern, however, was the payment of his claimed fees as indenture trustee and agent for the fractional interest holders. The reorganization trustees had refused to pay them. In early March, Fredericks, one of the fractional interest owners, expressed dissatisfaction with the manner in which the indenture trust had been handled and threatened to take action to oust both the reorganization trustees and Davidson. Davidson then conferred with Fredericks and, as a result of their meeting, Fredericks, who is a lawyer, became attorney for Davidson and on May 31, 1963 Davidson purported to appoint Fredericks as co-trustee and agent for the fractional interest holders for a portion of the properties under the indenture trust. On or about July 12, 1963 Davidson purported to appoint Fredericks to a similar position with regard to other properties under the indenture trust.
 
 
 4
 After the refusal of the reorganization trustees to surrender control of the leased premises to Davidson and Fredericks, as demanded between May 17 and May 23, 1963, the latter, as indenture trustee, commenced this proceeding in the bankruptcy court before Judge Sugarman to compel the surrender of the properties.
 
 
 5
 Termination clauses such as those here involved, although not looked upon kindly by the courts as a general rule, are valid and enforceable. B.J.M. Realty Corp. v. Ruggieri, 326 F.2d 281 (2 Cir. 1964). The right to terminate may, however, be waived or the landlord be estopped to assert the right. In re Wil-Low Cafeterias, 95 F.2d 306, 115 A.L.R. 1184 (2 Cir.), cert. denied, Wil-Low Cafeterias v. 650 Madison Ave. Corp., 305 U.S. 567, 58 S.Ct. 950, 82 L.Ed. 1533 (1938), 4 Collier on Bankruptcy, pp. 1371-1372 (14th ed. 1962).
 
 
 6
 Although the trial court concluded that the indenture trustees no longer had the power to terminate because of waiver and estoppel, estoppel more accurately fits the circumstances of the case. There is, however, evidence enough to support the Court's findings and conclusions of both waiver and laches.
 
 
 7
 Davidson, as president and director of the debtor, had a duty to do all in his power to preserve the interest and assets of the debtor's estate. He was also indenture trustee and as such had a duty to do everything in his power to preserve and protect the interest of the fractional interest holders. He was therefore operating in a dual capacity as agent for two principals with conflicting interests. The findings of the trial court show plainly enough that Davidson was motivated almost entirely by his desire to get the most he could of fees and commissions and at the same time do as little as possible for either of the principals. The court also found that his action in placing the debtor in reorganization was for the benefit of the fractional interest holders. They knew that he represented them and, at least by acquiescence, they supported and approved of his action. The only dissenting voice came from Fredericks, who was principally concerned to see that he himself was looked-out for, and he quickly joined Davidson, both as Davidson's attorney and as co-trustee for the fractional interest holders. The indenture trustees intentionally refrained from attempting to terminate the leases for well over two months and, meanwhile, at first Davidson alone and then both of them, led the reorganization trustees to believe that there was no intention of terminating the leases and encouraged and left it to the reorganization trustees to pull the chestnuts out of the fire for the benefit of the fractional interest holders by straightening out the financial difficulties involved and placing the management of the properties in good order.
 
 
 8
 Even though this assurance by the indenture trustees and the subsequent activities of the reorganization trustees which brought benefit to the fractional interest holders had not taken place, there might well be a question whether the fractional interest holders who knew that Davidson was their trustee and agent and who also knew that he was president and director of the debtor and owed duties of fidelity to the debtor, could allow him on their behalf to put the debtor into bankruptcy and use that very act to inflict damage upon the debtor by terminating the leases for the ostensible benefit of the fractional interest holders. We do not, however, rest the decision on that alone, because the trial court found that, in commencing the reorganization proceedings, Davidson acted primarily for and on behalf of the fractional interest owners. He was their representative and the fractional interest holders acquiesced in the reorganization proceedings and went on for more than two months accepting the benefits from it. We must hold them estopped from using those proceedings to terminate the leases. The reorganization trustees were perfectly justified in relying upon the plain implication that the indenture trustees would not terminate the leases and, therefore, expended a great deal in time, money and effort in bringing some order out of the financial chaos with which they were faced, all of which was greatly to the benefit of the fractional interest holders.
 
 
 9
 We do not reach the additional argument that either under general principles of equity or under Sec. 212 of Title X of the Bankruptcy Act, as urged by appellees and the SEC as amicus, there exists the power and under the circumstances here the duty to decline termination of the leases at this time in order to protect the public investors, not in the corporations under reorganization, but in fractional interests in the fees in the real property, from derelictions of their own trustees under their trust indenture by improvident termination of the leases to enforce their personal claims.
 
 
 10
 The order and judgment denying surrender are affirmed.