360 F.2d 882
 In the Matter of Adele Speare and George Speare,
individually and as co-partners doing business as
The Agora Prime Rib Restaurant and the
co-partnership
of The Agora Prime Rib Restaurant. Adele SPEATE and George
Speare, Debtors in Possession, Appellants,
CONSOLIDATED ASSETS CORPORATION,
Landlord-Appellee.
 No. 237, Docket 30171.
 United States Court of Appeals Second Circuit.
 Argued Feb. 23, 1966.
Decided May 5, 1966.
 
 Arthur E. Dienst, New York City, for debtors in possession, appellants.
 Sydeny Basil Levy, New York City (Aranow, Brodsky, Bohlinger, Einhorn & Dann, New York City), for landlord-appellee.
 Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 In February 1961 Adele and George Speare, as partners, filed a petition in the District Court for the Southern District of New York of an arrangement under Chapter XI of the Bankruptcy Act; they were authorized to act as debtors in possession. The Speares had operated The Agora Prime Rib Restaurant on West 33rd Street, New York City, in permises leased from Consolidated Assets Corporation for a twenty-one year term. The lease, on a printed form, provided in Paragraph Fourth:
 
 
 2
 'The Tenant shall not sub-let the demised premises nor any portion thereof, nor shall this lease be assigned by the Tenant without the prior written consent of the Landlord endorsed thereon.'
 
 
 3
 A typewritten ride modified this restriction so as to permit the tenant to sublet up to one-third of the permises, provided it continued as occupant and user of the remainder. By a letter separate from the lease Consolidated agreed that the consent referred to in the clause prohibiting assignment 'will not be unreasonably withheld.' The lease also gave the tenant an option to purchase the premises at any time before January 1, 1964, for $240,000 less certain deductions.
 
 
 4
 Rent having been in arrears when the Chapter XI petition was filed, Consolidated moved in April 1961 for an order directing the debtors to vacate or permitting it to institute summary proceedings to recover possession in the Municipal Court of New York City; the petition was accompanied by a copy of the lease, not including the supplemental letter which, of course, had no relevancy to the relief sought. In October Referee Joyce ordered the debtors to pay a fixed sum per diem, and the motion was marked off the calendar subject to restoration in the event of non-payment.
 
 
 5
 In the spring of 1962 the debtors entered into negotiations to sell the restaurant, which by then had closed, and to assign the lease to one Pickard for $20,000, the transaction providing for payment of any arrearages to Consolidated. According to Speare's testimony at the hearing on the instant motion, he had gone to see Ignatius, president of Consolidated, before signing the contract and had requested consent to the assignment, but Ignatius had refused, saying he was going to break the lease because of the filing under Chapter XI; there was discussion of the agreement not unreasonably to withhold consent and of the bankruptcy clause of the lease which Speare insisted did not cover a Chapter XI petition. When Speare told Pickard he might have trouble with the landlord, Pickard expressed confidence he could get consent to the assignment. The contract was signed on March 1, 1962, and the sale approved by Referee Joyce on March 16; on the same day Speare was taken into custody at the United States prison in Danbury, Connecticut. The next Speare heard about the sale was in early April, when his wife visited him and reported that Pickard was having difficulty in getting consent from Ignatius; on her ensuing visit to Danbury, she said the landlord was not giving consent and Pickard was withdrawing. Speare told her to force Ignatius to consent, insisting there was a clause in the lease whereby the landlord could not unreasonably withhold this. She replied that no such clause could be found in the copy of the lease held by Benjamin Finkel, their attorney in the Chapter XI proceeding.[1] Speare then suggested that she go to the Hall of Records' he examined a certified copy which she brought back and found the rider permitting partial subletting but nothing with regard to assignment. Finally, Mrs. Speare examined the copy on file with the bankruptcy court, told her husband that this also contained nothing as to the landlord's not unreasonably withholding consent, and suggested that perhaps his recollection was mistaken.
 
 
 6
 In May, despite Consolidated's refusal to consent to the assignment, the debtors sought to compel Pickard to turn over the purchase price for the restaurant. At the same time, Consolidated moved to restore to the calendar its motion to require the debtors to vacate or for permission to institute summary proceedings in the Municipal Court. On May 17, at a hearing at which Consolidated was represented by Sydney B. Levy, as special counsel, Finkel reported to the Referee the probable failure of the deal with Pickard and his hopes for a settlement, along with consequent unsuccessful negotiations with Consolidated to give up the lease in exchange for elief from arrearages.
 
 
 7
 This brings us to the critical date, May 28, 1962, when Referee Joyce conducted an adjourned hearing on the debtors' motion to collect the purchase price from Pickard and the landlord's motion for permission to dispossess. The minutes show Finkel, Lavy, and an attorney for Pickard in attendance, as well as an attorney for a creditors' committee. Finkel began by proposing that the arrangement with Pickard be called off on condition that a $2,000 deposit be contributed to the debtors' estate. Pickard's attorney seconded the motion; he explained 'There is a provision in the lease * * * and I can show you the photostatic copy * * * paragraph 4 of the lease, which specificially states that it cannot be assigned without the consent of the landlord. The landlord has said that he will not consent to assign it to this corporation. So that we have never had an assignment possible here.' After some colloquy the Referee noted that Mrs. Speare was shaking her head. What follows is important enough for quotation:
 
 
 8
 Mrs. Adele Speare: Your Honor, I understood that I did have a good lease, that was valid and that could be transferred.
 
 
 9
 'Now, I have a copy of this lease that Mr. Finkel had goven me--
 
 
 10
 The Referee: Pardon me.
 
 
 11
 What paragraph is it in?
 
 Mr. Rosen (Pickard's attorney):
 
 12
 Paragraph 4.
 
 
 13
 The Referee: Will you sit down and read paragraph 4 to yourself.
 
 
 14
 Do you agree to this, Mr.-- You represent the creditors' committee?
 
 
 15
 Mr. Crames: Yes.
 
 
 16
 Your Honor, to be perfectly frank, I have not seen a copy of the lease.
 
 
 17
 The Referee: Mr. Levy has a copy of the lease.
 
 
 18
 Mr. Levy: For the purpose of the record, on top of it, there are arrears of rent, they are in default, they have no rights under any circumstances under the lease. That is the position of the landlord. But the landlord is not going to consent, anyway.
 
 
 19
 Thereupon Referee Joyce indicated he would approve rescission of the Pickard contract on the terms proposed and, on Levy's request, authorized the latter to enter an order permitting Consolidated to bring summary proceedings in the Municipal Court. Such an order was entered on June 1, based on 'the consent of the debtors-in-possession before this Court on May 28, 1962.'
 
 
 20
 When Consolidated began the summary proceeding, Bond Trading Corporation, a chattel mortgagee claiming to hold an assignment of the lease as security, sought unsuccessfully to intervene and obtain possession of the premises; in connection with this, Zisser, an officer of Bond who had previously represented Speare in negotiating the lease, see fn. 1, furnished Mrs. Speare with a copy of the supplemental letter wherein Consolidated had agreed not unreasonably to withhold consent to assignment. On September 19, after the Municipal Court proceeding had gone to judgment, she obtained an order from Referee Joyce requiring Consolidated to show cause why the grant of permission to institute summary proceedings should not be revoked. Doubtless because of the illness and death of Referee Joyce, the hearing, before Referee Ray, was not held until March 1964.
 
 
 21
 At the hearing the Speares gave evidence of their unsuccessful efforts to find the supplemental agreement. Zisser testified that in the spring of 1962 Speare's new attorney, Jacob Mandelbaum, see fn. 1, had requested a copy of the lease; that, then being in Florida, he had asked his New York office to forward a photostat; and that he later learned that Mandelbaum had been sent only the lease and not the supplemental letter. Mandelbaum testified he had sent Finkel the document Zisser had given him. Finkel insisted that he never saw the supplementary letter until August 1962. Consolidated offered no evidence.
 
 
 22
 The Referee denied the motion to revoke the June 1 order, handing down findings and conclusions which were those submitted by Consolidated with inconsequential changes. He concluded, inter alia, that, with respect to the lanlord's undertaking not unreasonably to withhold consent to assignment, the debtors at all times 'had knowledge of the existence of said agreement * * * although its exact form was not at all times certain to them'; that 'there was no evidence offered to show that landlord's general or special counsel in these proceedings knew of the letter agreement prior to June 1, 1962'; that 'no representation was made by Consolidated or its attorneys that could have been relied upon by the Court or by the debtors in possession'; and that 'when the parties were before Referee Joyce on May 28, 1962, the landlord was under on obligation to inject itself into the proceedings settling the dofferences' between the debtors and Pickard. The district court dismissed a petition to review, Judge Cannella regarding himself as constrained by General Order 47 to accept the 'pivotal finding' that the debtors knew of the existence of the modification agreement although possibly being unsure of its exact form.
 
 
 23
 We disagree. The 'exact form' of the supplemental letter was the very nub of the matter. The Speares had indeed thought, and thought correctly, that Consolidated had agreed not unreasonably to withhold consent to an assignment-- an agreement which New York regards as a covenant to permit assignment unless the landlord can demonstrate just cause. See Arlu Associates, Inc. v. Rosner, 14 A.D.2d 272, 220 N.Y.S.2d 288 (1st Dept. 1961), aff'd, 12 N.Y.2d 693, 233 N.Y.S.2d 477, 185 N.E.2d 913 (1962); Singer Sewing Mach. Co. v. Eastway Plaza, Inc., 2 Misc.2d 509, 158 N.Y.S.2d 647 (Sup.Ct.1957). But it is equally plain that their inability to find the supplemental letter had misled them, and also their attorney, into doubting whether their recollection was correct. This was demonstrated by the transcript of the May 28 hearing; when Mrs. Speare asserted, 'I understood that I did have a good lease, that was valid and that could be transferred,' Referee Joyce, also an unwitting victim of the misapprehension, in effect told her she was wrong, and Consolidated's special counsel dotted the i and crossed the t.
 
 
 24
 F.R.Civ.P. 60(b), generally applicable in proceedings in bankruptcy by virtue of General Order 37, provides insofar as here pertinent:
 
 
 25
 'On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
 
 
 26
 (1) mistake, inadvertence, surprise, or excusable neglect;
 
 
 27
 (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
 
 
 28
 (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.'We need not consider whether the debtors brought themselves within subdivision (2) relating to newly discovered evidence, or whether Consolidated effectively avoided the reach of subdivision (3) authorizing relief for misconduct of an adverse party.[2] For we think it clear that Referee Joyce's order resulted from 'mistake' within subdivision (1). A series of mischances led to the unavailability of a document that would have completely altered the aspect of the hearing.[3] To be sure, Consolidated argues that it could not have been required to consent to the assignment so long as rent was in arrears. But since the sale to Pickard would have provided the funds to pay this, Referee Joyce would readily have found means to prevent a forfeiture on this score if he had known the facts. The principle that 'Concurrent findings of fact by the referee and the judge will ordinarily be accepted on appeal' does not require affirmance when, as here, the fact-finders have proceeded under too limited a view of the standards governing relief. In re Ernst, 107 F.2d 760, 761 (2 Cir. 1939).
 
 
 29
 We find it puzzling that in none of the proceedings before Referee Joyce was reference made to the provision in 70b of the Bankruptcy Act that 'A general covenant or condition in a lease that it shall not be assigned shall not be construed to prevent the trustee from assuming the same at his election and subsequently assigning the same.' See 4 Collier, Bankruptcy P70.44(3) (14th ed. 1964). According to Collier, this provision is applicable under Chapter XI, a view gaining support from the provision in 342 that a debtor continuing in possession 'shall have all the title and exercise all the powers of a trustee appointed under this Act.' See 8 Collier, supra, PP6.32, at 967 n. 30, 6.32(1) and (2); In re Walker, 93 F.2d 281, 283 (2 Cir. 1937). But we need not decide that point nor determine whether mistake of this sort would be within F.R.Civ.P. 60(b)(1), since the time for seeking relief on this ground has long since passed. See 7 Moore, Federal Practice P60.22(3) (2d ed. 1955).
 
 
 30
 A more serious question, also not discussed by the parties, is whether any mistake at the hearing before Referee Joyce was not inconsequential. The immediately following provision of 70b states that 'an express covenant that an assignment by operation of law or the bankruptcy of a specified party thereto or of either party shall terminate the lease or give the other party an election to terminate the same shall be enforceable.' Article Nineteenth of the lease authorized Consolidated to terminate if the tenant 'be decreed insolvent or bankrupt according to law, or if a receiver shall be appointed for the Tenant.'[4] Although approval of a petition under Chapter X would come within the first clause, Finn v. Meighan, 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945), there is no provision for approval of a Chapter XI petition, and that portion of the bankruptcy clause may therefore be inapplicable, see 8 Collier, supra, P4.11, particularly n. 7. On the other hand, placing the debtor in possession under control of the court would seem to have been sufficient to trigger the receivership clause, see In re Walker, 93 F.2d 281, 283 (2 Cir. 1937) (Chapter X); cf. Urban Properties Copr. v. Benson, 116 F.2d 321 (9 Cir. 1940); but see In re Burke, 76 F.Supp. 5 (S.D.C.alif.1948), and if Consolidated had promptly availed itself of its right to terminate on that ground, it would have been entitled-- unless the default in rent was cured, see fn. 4-- to the relief which Referee Joyce ultimately granted. Such a 'right to terminate may, however, be waived or the landlord be estopped to assert the right.' Davidson v. Shivitz, 354 F.2d 946, 948 (2 Cir. 1966). See 4 Collier, supra, P70.44 at 1371-72 and n. 13 and cases there cited; B.J.M. Realty Copr. v. Ruggieri, 338 F.2d 653 (2 Cir. 1964). The circumstances here strongly suggest this. Although the landlord's initial motion referred to the bankruptcy clause as well as to the arrearages of rent, it is not clear that Referee Joyce meant to authorize substantial per diem payments on a lease which the landlord was free to terminate at any time event if these were duly made. And the landlord's failure to refer to the bnakruptcy clause in the 1962 proceeding may indicate that it thought its rights under that clause had been lost, or believed that assertion of them would be fruitless in view of the feasibility of curing the defaults out of the proceeds of the sale to Pickard. Since the record is not sufficiently complete for us to make a final determination on this point, the issue may be explored upon remand in the light of pertinent decisions, particularly In re Walker, supra, 93 F.2d 281, and Geraghty v. Kiamie Fifth Avenue Corp., 210 F.2d 95 (2 Cir. 1954).
 
 
 31
 We hold that, subject to the considerations set forth in the preceding paragraph, the Speares were entitled to have the order permitting Consolidated to institute summary proceedings set aside 'upon such terms as are just'-- an issue which likewise will have to be determined upon remand unless the bankruptcy clause of the lease should be held operative. The order dismissing the petition to review is reversed and the cause is remanded to the district court with instructions to vacate Referee Ryan's order and to direct further proceedings consistent with this opinion. Costs will abide the event.
 
 
 
 [1]
 Speare had been represented by Martin Zisser in negotiating the lease with Consolidated, but Zisser moved to Florida before the Chapter XI petition was filed. Jacob Mandelbaum, and on his recommendation Jacob Mandelbau, and on his recommendation engaged Finkel to institute and conduct the Chapter XI proceeding
 
 
 [2]
 Consolidated argues that any non-disclosure of the supplemental letter in the spring of 1962 could not support a charge of fraud because there was no evidence it knew the debtors could not locate the agreement and as a hostile litigant it had no duty to furnish records for the opposing party. The interesting question we leave undecided is whether knowledge that Pickard was withdrawing because of its refusal to consent did not create an affirmative duty on Consolidated's part to see that the Referee had the relevant facts within its knowledge, breach of which would constitute 'misconduct,' even though its special counsel was not fully informed of them
 
 
 [3]
 The presence of factors beyond the control of the debtors is sufficient to distinguish this case from situations where evidence was not made available to an attorney or court because of intentional conduct on the part of the complainant. Compare Kahle v. Amtorg Trading Corp., 13 F.R.D. 107 (D.N.J.1952)
 
 
 [4]
 The provision was qualified by a typewritten rider stating that it would be inoperative as long as rent was duly paid, but this condition had not been met either on the date when the petition was filed or thereafter