**In re RANCH HOUSE OF ORANGE–BREVARD, INC., Debtor.**

**RANCH HOUSE OF ORANGE–BREVARD, INC., Plaintiff,**

**v.**

**Frieda GLUCKSTERN, as personal representative of the Estate of Louis Gluckstern, deceased, et al., Defendants.**

**Bankruptcy No. 80–290–Orl–BK–GP. Adv. No. 83–68.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Sept. 28, 1987.

**324**

James M. Donohue, Tallahassee, Fla., Lawrence D. Johnson, Orlando, Fla., for Gilman.

Robert F. Jordan, Ft. Lauderdale, Fla., John V. Baum, Fern Park, Fla., for Ranch House.

Raymond J. Rotella, Orlando, Fla., for Gluckstern.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding is before the Court upon the motion of Ranch House of Orange-Brevard, Inc., ("Ranch House") to assume an executory contract with Frieda Gluckstern and Sybil Gilman. After hearing, this Court ruled that the lease had been expressly rejected by virtue of the confirmation of the debtor's plan of reorganization. The Eleventh Circuit Court of Appeals affirmed in part but remanded the proceeding for consideration of whether the doctrines of estoppel and waiver should apply. *See, In re Ranch House of Orange-Brevard, Inc.*, 773 F.2d 1166 (11th Cir.1985). For the following reasons, this Court finds that they do apply.

## FINDINGS OF FACT

Upon the evidence presented, the Court makes the following Findings of Fact:

1. On December 1, 1966, Lou Gluckstern (whose interest in the lease was subsequently acquired by Frieda Gluckstern) and O.D. Peavy (whose interest in the lease was subsequently acquired by Sybil Gilman) leased a tract of land to Ranch House of Orange-Brevard, Inc. at a rental of $433 a month for a term of twenty (20) years. The lease was renewable for five additional five-year terms.

2. Ranch House subsequently erected a restaurant building upon the property it had leased from Gilman and Gluckstern which, with their consent, it sublet in 1977 to a third party for a monthly rental of $1,300.00.

3. At the instruction of Sybil Gilman, and during the years 1980 through 1984, Ranch House forwarded that portion of the rental due Gilman under the lease to her bank for deposit to her account. As a result of that arrangement, Gilman neither saw nor was required to endorse those checks received by her bank from Ranch House.

4. That portion of the rental due Gluckstern was mailed directly by Ranch House to Gluckstern.

5. By the spring of 1980, Ranch House was three months in arrears on its rental payments. On May 6, 1980, Gilman retained counsel to recover that portion of the rental payment due her. Those

amounts due Gilman were paid in full on May 19, 1980.

6. Ranch House filed a petition under Chapter 11, Title 11, on May 16, 1980. Gilman was not listed by Ranch House as a creditor in the schedules which accompanied its petition but was instead listed as one of its lessors. The address scheduled for her was that of the bank to which the rental payments were being sent.

7. Gluckstern was identified as a creditor of Ranch House in its schedules, and he subsequently retained counsel to initiate an adversary proceeding to terminate the lease and evict Ranch House from the leased premises. That litigation was disposed of when, in December 1980, Ranch House agreed to pay Gluckstern accumulated arrearages and assume the executory lease agreement between the parties. Jules Cohen, as counsel for Gluckstern, was to prepare a motion pursuant to 11 U.S.C. § 365 seeking court approval of that assumption but did not do so.

8. The evidence is in conflict on when Gilman first became aware of the fact that Ranch House had filed for Chapter 11 relief. Although Gilman testified that she did not make that discovery until the fall of 1982, it was nonetheless undisputed at the time of trial:

(a) That her attorney spoke with Gluckstern's attorney regarding the bankruptcy on September 3, 1980;

(b) That Gilman and her attorney met on October 23, 1980, and concluded that she would not participate in the litigation contemplated by Gluckstern;

(c) That Gilman wrote to Gluckstern's attorney on October 23, 1980, during which she made specific reference to the pending bankruptcy of Ranch House;

(d) That Gilman received a letter from Gluckstern's attorney dated November 6, 1980, in apparent response to her letter of October 23, 1980, which again made specific reference to the pending bankruptcy of Ranch House.

The Court finds that Gilman had implied, if not actual, notice of Ranch House's involvement in bankruptcy proceedings by no later than October 23, 1980.

9. Ranch House's plan of reorganization was confirmed by this Court on October 19, 1981. As of that date, no court order had been obtained authorizing the assumption of the lease by Ranch House contemplated by the settlement of the adversary litigation initiated by Gluckstern.

10. In July, 1982, Ranch House sought to assign its interest in the lease to a sublessee. Gilman refused to consent to the assignment, insisting that the amount of rent under the original lease would first have to be renegotiated. Gluckstern did not respond to Ranch House's request for that consent. Neither of the lessors raised the issue of whether the lease was still valid at that time.

11. In September, 1982, Ranch House filed suit in a Florida state court seeking to compel its lessors' consent to the proposed assignment. Over the next several months, the lessors attempted to articulate their reasons for withholding such consent, including Ranch House's involvement in bankruptcy proceedings, an alleged failure by Ranch House to secure appropriate insurance coverage upon the leased premises for the benefit of the lessors, the financial instability of the proposed assignee, and the like. Neither Gilman or Gluckstern asserted that the lease between the parties was void. On the contrary, the nature of the objections to the proposed assignment raised by Gilman and Gluckstern are consistent with a belief on their part that the lease agreement in question remained valid and binding upon both lessors and lessee.

12. On November 12, 1982, the lessors advised Ranch House for the first time of their intent to terminate the lease on the ground that it had not been properly assumed by Ranch House during its reorganization either by motion or inclusion in the plan.

13. In the meantime and without interruption, all sums due either Gilman or Gluckstern under the lease had been paid by Ranch House and were accepted by Gilman and Gluckstern.

14. Following the notice of November 12, 1982, such payments continued to be

accepted by Gilman through the month of January, 1985, by deposit to her bank account, and by her personal receipt and negotiation of the checks up to and including the month of November, 1986. At this point, the initial term of the lease agreement expired and Gilman refused to negotiate further rent checks.

15. Following the notice of November 12, 1982, the rent payments continued to be accepted by Gluckstern up to and including the month of July, 1987.

## CONCLUSIONS OF LAW

The issue before this Court is whether or not Gilman and Gluckstern have waived, or should be estopped from asserting, the rejection of their lease with Ranch House by:

1. Accepting payment of those sums necessary to cure defaults in the payment of rent that had accrued by the date of confirmation of Ranch House's plan of reorganization.

2. Accepting the continued payment of rent following the confirmation of that plan.

3. Failing to take any act evidencing an intention to "terminate" the sublease prior to the initiation of this litigation to compel the lessors to consent to the proposed assignment of the lease.

It is generally held that a party may waive any right to which he is legally entitled, whether it be secured by contract, conferred by statute, or guaranteed by the Constitution. Even where a statute declares a transaction void, the party for whose benefit the statute lies may waive it, "void" being held to mean voidable at the party's choice. 28 Am.Jur.2d "Estoppel & Waiver" § 164. *Larkin v. Sills*, 377 F.2d 1 (5th Cir.1967); *Davidson v. Shivitz*, 354 F.2d 946 (2d Cir.1966), *Ten-Six Olive v. Curby*, 208 F.2d 117 (8th Cir.1953); *Entin v. Stevens*, 323 F.2d 894 (8th Cir.1963); and *In re T.F.P. Resources, Inc.*, 56 B.R. 112 (Bkrtcy.S.D.N.Y.1985); are illustrative of this point.

In *Larkin v. Sills*, the debtor, who was then a party to an executory lease, initiated proceedings for relief under Chapter VII of the Bankruptcy Act on May 7, 1965. Section 70(b) of the Act (11 U.S.C. § 110(b)) provided that an executory lease not assumed or rejected within sixty (60) days of the initiation of such proceedings "shall be deemed to be rejected."

*Larkin* did not assume or reject the lease within that period and instead, the trustee and the debtor's landlord came to an agreement for the assignment of the lease to a third party. Throughout the proceedings, the landlord indicated that it would "cooperate in every way with Miss Sills (the trustee) to do whatever she wants to do with the property." However, on August 6, 1965, after the trustee arranged an assignment of the lease, the landlord objected for the first time that the lease not having been assumed within sixty (60) days, was terminated.

The Court held that the trustee had tacitly, if not formally, assumed the lease; that the rights accorded him by statute to treat the lease as terminated could be waived; and that such a waiver had in fact occurred as a consequence of the landlord's failure to assert rejection until he received a more attractive bid on his property.

Likewise, in *Ten-Six Olive v. Curby* it was held that a landlord may waive its right to terminate an unexpired lease, not timely assumed or rejected, by acknowledging the continued existence of the lease or by accepting payment of rent after a lease had been otherwise rejected. Said the court:

> We can see no reason why the lessor may not also waive the right accorded him by the terms of this statute. It is undisputed in the record that appellant indicated by its acts and conduct that it considered the lease to be in full force and effect long after the petition for reorganization was filed.... Since appellant did not want to treat the lease as having been terminated either by its terms or by the bankruptcy statute, but chose to acknowledge the continued existence of it, it must be deemed to have waived its right to have it terminated and to have become bound by its course of conduct. 208 F.2d at 123.

In *Entin v. Stevens* the Eighth Circuit affirmed a finding of waiver upon similar facts and quoted the lower court's findings as follows:

The facts, as set out above, show us that the lessor was aware of the status of the debtor at all times and was informed of intended plans as they developed. To these plans the lessor apparently consented until the telegram of December 13, 1962, the day before the referee's hearing on the proposed sale, in which the lessor gave notice of his intention to cancel the lease. Prior to this the lessor had accepted each month's rental payments without reservation. It further appears that the action of [the lessor] at this time is to gain a superior bargaining position with respect to the lease in question. The Court finds that under all the circumstances the lessor had waived the right he may have had to cancel the lease. 323 F.2d at 897.

Cases decided since the adoption of the Bankruptcy Amendment and Federal Judgeship Act of 1984 have continued to hold that the equitable principles of waiver and estoppel are applicable to the application of § 365(d) of the Code to executory lease agreements. For example, in *In re T.F.P. Resources, Inc.*, 56 B.R. 112 (Bkrtcy. S.D.N.Y.1985) the court stated:

[U]pon a breach courts will deem a forfeiture provision waived when by his conduct a landlord evidences an "intent to treat the lease as continuing rather than as terminated...." This intent to waive the benefits of a forfeiture clause is most often inferred from the acceptance of rent which accrues after the lessee's breach.... Similarly, a lessor's election to treat a lease as not rejected is to be inferred from accepting rental payments after it was deemed rejected pursuant to § 365(d)(4). [Citations omitted] 56 B.R. at 116.

*See also, In re J. Woodson Hays, Inc.,* 69 B.R. 303 (Bkrtcy.M.D.Fla.1987); *In re Haute Cuisine, Inc.,* 57 B.R. 200 (Bkrtcy. M.D.Fla.1986).

The evidence before this Court shows: (1) that both Gilman and Gluckstern had actual knowledge of those reorganization proceedings initiated by Ranch House, (2) that both Gilman and Gluckstern accepted rent after the confirmation of Ranch House's plan of reorganization, and (3) that both Gilman and Gluckstern continued to treat the lease as valid following Ranch House's rejection of that lease in its plan of reorganization. Under these circumstances, Gilman and Gluckstern have waived their right to treat the lease agreement between the parties as rejected.

The evidence before this Court further shows that Ranch House clearly intended to assume its lease with Gilman and Gluckstern, and that the failure of the parties to obtain a court order approving that assumption may in part be attributed to the unexplained failure of counsel for Gluckstern to prepare and file a motion seeking that approval. In reliance upon the continued validity of that lease, moreover, Ranch House entered into a binding contract to assign its interest thereunder to a third party, upon which it might be held liable for damages should it be unable to meet its obligations thereunder. Under these circumstances, Gilman and Gluckstern should be estopped to treat the lease agreement between the parties as rejected.

A separate Final Judgment will be entered reflecting the Court's findings.