In re The HUB OF MILITARY
CIRCLE, INC., Debtor.

The EQUITABLE LIFE ASSURANCE
SOCIETY OF the UNITED
STATES, Plaintiff,

v.

The HUB OF MILITARY CIRCLE,
INC., Defendant.

Bankruptcy No. 81–00518–N.
Adv. No. 810257–N.

United States Bankruptcy Court,
E. D. Virginia,
Norfolk Division.

Aug. 13, 1981.

Benjamin C. Ackerly, Hunton & Williams, Richmond, Va., for plaintiff.

Michael H. Nuckols, Jett, Agelasto, Berkley, Furr & Price, Norfolk, Va., for defendant.

OPINION AND ORDER

HAL J. BONNEY, Jr., Bankruptcy Judge.

The Equitable Life Assurance Society of the United States [Equitable] has brought an action for unlawful detainer against the Hub of Military Circle, Inc., [The Hub] alleging that (1) The Hub has breached the terms of its lease, (2) Equitable has terminated the lease, and (3) The Hub is wrongfully continuing in possession of the leased premises.

Equitable is not entitled to such relief.

[1.] The Debtor has the absolute right, by statute, to assume the lease after bankruptcy and to cure any defaults. 11 U.S.C. § 365. And a debtor has until just before confirmation of a plan to do this. 11 U.S.C. § 365(d)(2). That point has not arrived.

[2.] The Court finds as a matter of fact that the landlord permitted a cure of any breaches and that the tenant, The Hub, did indeed timely cure one and attempted to cure others, but was rebuffed. This issue is more fully considered below.

[3.] The issue was not raised by the defendant—debtor, but it was a clear violation of the automatic stay for Equitable to commence any action following the entry of an order for relief on April 3, 1981. The letter of default sent by the landlord on April 28th was a technical violation of the stay. 11 U.S.C. § 362(a)(3). Relief from the stay was essential. Perhaps Equitable so intends this action. It should be clearer.

"Clearly an attempted ouster of a lessee after commencement of the case would be stayed under section 362(a)(3)." 2 Collier On Bankruptcy [15th Ed.], § 362.04[3]

Therefore, finding for the defendant—debtor—lessee on any one of the above three grounds would defeat the plaintiff, Equitable, on its complaint "for unlawful detainer." The Court finds for the defendant on all three.

The issue of factual default, [2.] above, requires exposition.

■ The Hub is a Chapter 11 debtor-in-possession which is in the business of selling men's clothing. An order for relief was filed in this court on behalf of The Hub on April 3, 1981. It maintains its operation in the Military Circle Shopping Center in Norfolk pursuant to a lease originally executed on April 3, 1968, with Military Square, Inc. The landlord's interest in the property has since been transferred to Equitable.

Two articles in the lease provide background for the issue in this action. Article One states that rent is "payable in advance upon the first day of each calendar month." Article Fifteen of the lease requires that the "Tenant shall maintain on the premises a substantial stock of goods and equipment to assure successful operation of Tenant's business. Tenant shall maintain the premises open and available for business activity therein during such periods and hours as are customary in the shopping center. . . ."

On April 1, 1981, the rent for April was not paid by The Hub. On April 28, 1981, Equitable sent a letter to The Hub stating that it was in default of the rent article and of the inventory article of the lease. The letter also contained the following statement—"Unless the operation of the aforesaid business is continued in a manner that is in compliance of the terms of said lease within ten (10) days and that the rent is paid within ten (10) days, we shall exercise the legal rights available to us as a result of your said default." On April 30, Equitable sent a similar letter notifying The Hub of its default with regard to the operating hours provision. This letter did not contain the 10 day warning language.

May 13 brought a letter from Equitable which recited the nonpayment of rent for April and May and continuing improper inventory levels as acts of default. Again, the letter stated that "Unless the operation of the aforesaid business is continued in a manner that is in compliance of the terms of said lease within ten (10) days, we shall exercise the legal rights available to us as a result of your said default."

The Hub tendered a check for rent for the month of April on May 18 and a check for the May rent on May 22. Both checks were refused by Equitable. Inventory was returned to a normal level on May 14.

Equitable gave The Hub notice of the termination of the lease by letter on May 18, 5 days after the second notice of default. This action for unlawful detainer was commenced on May 27, 1981.

Equitable, which owns Military Circle Shopping Center, utilizes the services of Alpert/Massey Management Corporation in managing the property and the letters referred to above were, in reality, from its acknowledged agent, Alpert/Massey.

The letters are crucial. It is abundantly obvious that the letters of May 13th gave the tenant ten (10) days from that date to cure all of the defaults. By the next day, the store was restocked with $275,000 worth of clothing, retail, in excess of the $250,000 stock required. On May 18th, the April rent was taken to the agent's office, accepted by the bookkeeper, but returned later that day by a security guard. On May 22nd, still within the ten days granted, The Hub tendered the May rent, but this was immediately refused.

Equitable and its agent may now contend—and they may have intended—that the April 28th letter rules. But it granted ten additional days of grace in the May 13th letter for all omissions, and it is bound by the grace it gave. The Court is of the opinion this is a reasonable interpretation of the letter. Not only is it reasonable, but the Court so reads this plain meaning. The Hub certainly understood it this way and quickly acted within that time frame.

The Court finds that all pertinent defaults were cured or cure tendered by the tenant within the time established by the landlord. The briefs filed on this point are

of no help. It is not a matter of waiver or inaction but of extending the time. They wander on about waivers in general.

The fault, dear Brutus, is that it was not artfully handled. The landlord was taking money and then sending it back. The landlord was accepting March rent in April. The landlord was not wording its letters very well. Yes, breaches did occur, but instead of *clearly* drawing the line, the landlord hesitated and created an "out" or a solution large enough to drive salvation through.

### After Thoughts

Let it be noted that the parties are on friendly terms, but The Hub has a favorable lease at a favorable rent: Equitable has occasion to rent it to someone else. For future leasehold issues in Chapter 11 cases three rules here emerge:

(1) The automatic stay pertains to leases,

(2) a debtor may assume a lease and cure any defaults, and

(3) one had better have a sound procedure for handling lease defaults. "He who doesn't do it right is lost." Anon.

The Court finds for the defendant. The complaint is denied.

IT IS SO ORDERED.