**In re Lucy WHITT, Debtor.**

**Lucy WHITT, Plaintiff,**

**v.**

**PHILADELPHIA HOUSING AUTHORITY, Defendant.**

**Bankruptcy No. 87–02062S.
Adv. No. 87–0601S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 13, 1987.

---

David A. Searles, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff/debtor.

Denise J. Baker, Philadelphia Housing Authority, Philadelphia, Pa., for defendant.

Joseph B. Finley, Jr., Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant adversarial proceeding causes us to explore whether certain actions of a landlord, in this case a public housing authority, are impermissible in light of the automatic stay arising pursuant to 11 U.S.C. § 362(a) and whether the landlord should be subject to monetary liability, pursuant to 11 U.S.C. § 362(h), for actions which, while we find impermissible, were rather mild and in light of the absence of proof of any actual damages to the tenant-debtor therefrom. We hold that it is violative of the automatic stay for a landlord to (1) send a tenant bills which include amounts for dischargeable pre-petition rent; (2) threaten to institute or in fact institute a legal proceeding based upon post-petition, as well as pre-petition, rental delinquencies without first obtaining relief from the stay; and (3) in the case of a public housing authority, deny a post-petition tenancy to a tenant-debtor on the basis of a dischargeable pre-petition rental delinquency. However, we further hold that the possibly innocent and mild violations of the automatic stay here, coupled with the tenant's failure to produce any evidence of actual damages, precludes any award of monetary damages, costs, or attorney's

fees to the Debtor, and confines her to declaratory relief.

Procedurally, the bankruptcy case underlying this controversy began with the filing of a no-asset Chapter 7 bankruptcy petition by the Debtor, LUCY WHITT, on April 29, 1987. The instant Adversary proceeding was commenced against the PHILADELPHIA HOUSING AUTHORITY (hereinafter referred to as "PHA") by the Debtor on June 24, 1987. At a hearing of August 12, 1987, the parties agreed to present the case on a Stipulation of undisputed facts to be filed on or before September 15, 1987; opening Briefs to be filed on or before October 15, 1987; and reply Briefs to be filed on or before October 30, 1987.

Unfortunately, the apparent simplicity of this common and preferred means for disposing of this matter was marred by the inability of the parties to agree to a Stipulation of undisputed facts. As a result, the parties filed Cross–Motions for Summary Judgment with Briefs on October 15, 1987. No reply Briefs have appeared.

The substantive dispute between the parties has roots which, as a decision of the Pennsylvania Superior Court, *Whitt v. Philadelphia Housing Authority*, 325 Pa. Super. 135, 472 A.2d 684 (1984), indicates, span over the past eleven years. In October, 1976, the Debtor presented a breach of warranty complaint to arbitration pursuant to a grievance procedure established by Consent Decree in *Brown v. Philadelphia Housing Authority*, C.A. No. 72–2083 (E.D.Pa., Consent Decree approved June 14, 1974). 325 Pa.Super. at 138, 472 A.2d at 686. An award that $645.00 in past rent was abated and that the Debtor did not have to make any future rental payments until certain repairs were made was entered and confirmed by the court. 325 Pa.Super. at 138–39, 472 A.2d at 686. When the repairs were allegedly not made, the Debtor ceased paying rent, was threatened with eviction, and ultimately filed a second grievance in 1978. 325 Pa.Super. 139, 472 A.2d at 686. The result of this proceeding was a direction that the PHA make certain repairs and that the Debtor begin paying rent, less a $7.00 monthly

rent abatement. *Id.* One Common Pleas Court judge confirmed this award, while another judge of the same court, who had confirmed the earlier award, declared the PHA to be in contempt of his earlier Order. 325 Pa.Super. at 139–40, 472 A.2d at 686–87. On appeals to the Superior Court from both Orders, the contempt decree was reversed and the confirmation of the second arbitration award was affirmed. 325 Pa. Super. at 145, 472 A.2d at 689.

This long history of discord between the parties probably best explains the spirit of mutual distrust which engendered the proceedings in this court, despite the relatively mild conduct of the parties. The Debtor's case is based upon her receipt of the following:

1. Post-petition rent statements for June, July, and August, 1987, which continued to carry forward an alleged pre-petition delinquency balance in excess of $7,500.00.

2. A letter from PHA's manager, dated June 22, 1987, indicating that the Debtor has a post-petition rent balance of $63.00 and that the PHA "will be forced to start proceedings immediately to [sic] this debt" if she failed to contact PHA's office concerning this matter within five days.

3. A "Notice of Termination of Lease" sent to the Debtor by the PHA's Deputy Executive Director on July 1, 1987, because she had allegedly failed to pay her June rent of $63.00.

The Debtor sought declaratory relief that the above actions violated the automatic stay, damages in some unspecified amount due to the Debtor's "alarm" at "PHA's aggressive post-petition dunning," Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, at 6, and attorney's fees and costs pursuant to 11 U.S.C. § 362(h).

We do note that PHA has not been blameless in escalating the post-petition conflicts between the parties in this court. On August 14, 1987, the PHA filed a Motion seeking relief from the stay, in which it claimed a pre-petition obligation of the Debtor to it in excess of $16,000.00 (in contrast to the $7,500.00 figure appearing

on its rent statements) and claimed that the Debtor was not paying full post-petition rentals because she declined to include the $7.00 monthly abatement with her rentals, but was instead depositing the $7.00 monthly sum into escrow with her counsel. After a brief argument, considering the PHA's allegations to be trifling, we denied this Motion in an Order of September 16, 1987.

The Debtor remitted a Declaration in support of her Summary Judgment Motion, reciting her receipt of the rent statements and notices referenced above. Conspicuously absent is any statement by the Debtor that she believed the pre-petition rents on the statements were in fact due or that she was the least bit intimidated by the PHA's notices.

The PHA presents several responses. First, it contends that the rent statements and notices are computer-generated and presumably suggests thereby that it is unable to tailor them for tenants who have filed bankruptcy. It then argues that (1) Its attempts to collect post-petition rent are not stayed; (2) The PHA was merely advising the Debtor that she had failed to make post-petition payments and that "PHA did not go to state court to try to collect the May rents, since said act could be construed as a violation of the automatic stay." Brief in Support of PHA's Cross-Motion for Summary Judgment, at 6; and (3) If its act were violative of the stay, they were merely technical and should not trigger an award of damages.

■ We agree with each of the three arguments of PHA set forth above. We do not, however, agree that the fact that the PHA utilizes computers has any bearing on whether it can be held to have violated the automatic stay. The notices sent to tenants in bankruptcy will have to be re-programmed or simply pulled out and sent out by PHA employees manually. Clearly, the fact that a creditor uses a computer does not excuse a violation of the automatic stay and we do not intend to consider any violation of the automatic stay too technical to merit relief once a creditor has been expressly warned about the illegal nature of its acts and continues to engage in them, and we are proceeding to "expressly warn" the PHA about this practice in granting declaratory relief to the Debtor here.

The dispatch of a rent statement requesting payment of pre-petition rental delinquencies which almost certainly will be discharged in bankruptcy is, plain and simply, an act to "collect, assess, or recover a claim against the debtor that arose before the commencement of the case....," in violation of 11 U.S.C. § 362(a)(6). Were any precedent needed to support the self-evident application of § 362(a)(6) to the PHA's dispatch of rent statements including pre-petition delinquencies, that precedent exists, directly on point, in the Order of February 12, 1986, of former Chief Judge Goldhaber, in *In re Louise Nichols, Nichols v. Chester Housing Authority*, Bankr. No. 85–05283G, Adv. No. 86–0061G (Bankr.E.D. Pa.), enjoining the public housing authority in the neighboring City of Chester, Pennsylvania, from engaging in precisely the same practice. However innocent, the practice must be declared violative of the automatic stay, and the PHA must cease and desist from this practice or face consequences such as Judge Goldhaber's subsequent Order of September 9, 1986, in the *Nichols* case, fining the Chester Housing Authority $750.00 and awarding attorney's fee of $1,530.00 to the Plaintiffs' counsel.

■ The PHA appears to concede in the passage from its Brief quoted at page 5 *supra*, contrary to the content of the notices dispatched by it to the Debtor, that it could not commence an action against her, even based strictly upon post-petition rental delinquencies, without first obtaining relief from the automatic stay. One of the cases cited by it, *In re The Hub of Military Circle, Inc.*, 13 B.R. 288, 288, expressly states that dispatch of a post-petition "letter of default ... was a technical violation of the stay. 11 U.S.C. § 362(a)(3)." We agree.

Section 362(a)(3) prohibits "any action to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." This section is not "limited in impact to

claims that arose before the commencement of the case." *In re Clark*, 69 B.R. 885, 890 (Bankr.E.D.Pa.1987). *See also, e.g., In re M. Frenville Co.*, 744 F.2d 332, 338 n. 11 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985).

█ The Debtor's tenancy or even her bare possessory interest in her residence is a "legal or equitable interest" which is clearly "property of the estate" by the terms of 11 U.S.C. § 541(a). *See In re Sudler*, 71 B.R. 780, 781, 784 (Bankr.E.D. Pa.1987); and *In re Borbridge & DeSantis*, 66 B.R. 998, 1002–03 (Bankr.E.D.Pa.1987). *See generally United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983); and *In re Mason*, 69 B.R. 876, 882–84 (Bankr.E. D.Pa.1987). Hence, a landlord cannot attempt to maintain an eviction action against a tenant-debtor, even if the grounds for eviction have arisen solely post-petition, without first obtaining relief from the automatic stay imposed by 11 U.S.C. § 362(a)(3).

In passing, we note that "property of the estate" embraces "[a]ny interest in property that the estate acquires after the commencement of the case," 11 U.S.C. § 541(a)(7), as well as property interests held as of the date of filing. Therefore, 11 U.S.C. § 362(a)(3) protects the tenant-debtor from an eviction action even if the action is based solely on post-petition events and even if the tenant-debtor moved to a different premises than that in which he or she resided at the outset of the case, unless relief from the automatic stay is first granted by the bankruptcy court.

As the *Hub of Military Circle* case cited *supra* establishes, a "letter of default" or a notice of termination of a lease, even if based on events occurring exclusively post-petition, is an "act" to obtain possession of "property of the estate" barred by § 362(a)(3). Although the threats posed by the PHA's notices purporting to terminate the Debtor's lease and proposing to start eviction actions against her may have been empty, they were nonetheless "acts" to obtain possession of property of the Debt-

or's estate. The Debtor is hence entitled to declaratory relief that this conduct was illegal.

The Debtor also asks us to grant declaratory relief protecting her from denial of an indefinite future PHA tenancy on the basis of her pre-petition alleged rental delinquency on the basis that actions of the PHA to the contrary would be violative of 11 U.S.C. § 525(a). However, we believe that we set this principle forth so clearly in *Sudler, supra,* 71 B.R. at 786–87, that we need not reiterate it. *Accord, e.g., Gibbs v. Housing Authority of City of New Haven*, 76 B.R. 257, 263 (D.Conn.1983). Further, we do not understand the PHA to question this principle, nor to have acted contrary to it. For this reason, we shall not address this issue in our Order.

The final issue is whether, having determined that the Debtor is entitled to relief declaring that the PHA's dispatch of rent statements containing pre-petition rent delinquencies and sending out delinquency notices such as it did were violative of the automatic stay, we should award her monetary relief as well. The Debtor's claim in this regard is based upon 11 U.S.C. § 362(h), which provides as follows:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages.

We agree with the analysis of § 362(h) provided by our brother, Judge Fox, in *In re Wagner*, 74 B.R. 898 (Bankr.E.D.Pa. 1987). There, Judge Fox rejects the notion that a broad conception of a defense of "innocence" might arise from the "willful violation" requirement of § 362(h) with his succinct statement that "knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay." *Id.* at 904. *Accord, H & H Beverage Distributors, Inc. v. Department of Revenue of the Commonwealth of Pennsylvania*, 79 B.R. 205, 208 (E.D.Pa.1987).

█ However, we also agree with Judge Fox's observations in *Wagner* that "[t]he

violation of the stay, by itself, does not support an award of damages and attorney's fees." 74 B.R. at 902. Thus, we conclude with him, that "[n]o damages will be awarded as a result of the violation of the automatic stay ... [if] there was no evidence that the debtor suffered any harm." *Id.* at 905. *See also Morgan Guaranty Trust Co. v. American Savings & Loan Ass'n*, 804 F.2d 1487, 1491 (9th Cir.1986); *In re Bain*, 64 B.R. 581, 584 (W.D.Va.1986); *In re Freunscht*, 53 B.R. 110, 112–13 (Bankr.D.Vt.1985); and *In re Ramage*, 39 B.R. 37, 39 (Bankr.E.D.Pa. 1984).

■ We find no evidence of any actual damages suffered by the Debtor here as a result of the PHA's actions in violation of the automatic stay. Nor do we find evidence of any actions which we would deem such serious violations of the automatic stay that damages can be presumed, thus subjecting the creditor to even a modest fine despite lack of proof of damages. *Compare In re Demp*, 23 B.R. 239, 240 (Bankr.E.D.Pa.1982). Rather, we find here the combination of *de minimus* stay violations and no damages. In such a situation, we decline to award monetary damages pursuant to § 362(h). Since costs and attorney's fees, by the terms of § 362(h), are allowable only to embellish "actual damages," these elements of recovery will be denied to the Debtor as well, at least at this juncture.

However, we do remind the PHA that this court, in *Nichols*, did not hesitate to impose liberal fines and attorney's fees against public housing authorities which persisted in committing what otherwise might be considered "minor" violations of the automatic stay after being specifically directed to cease and desist therefrom.

Consider our enclosed Order as a word to the wise.