**In re BOSTON BUSINESS MACHINES, Debtor.**

**Bankruptcy No. 87–02283S.**

United States Bankruptcy Court, E.D. Pennsylvania.

July 27, 1988.

Royland F. Cain, Penns Grove, N.J., for debtor.

Gregory L. Sturn, Warrington, Pa., for Rudolph Realty.

James J. O'Connell, Philadelphia, Pa., U.S. Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The sequence of unfortunate events described herein which have transpired between the Chapter 11 Debtor and its landlord requires us to impose substantial damages upon the landlord for evicting the Debtor without first obtaining relief from the automatic stay, but to decline the Debtor's attempt to very belatedly assume the lease in issue. However, as we indicated to the parties previously, we will give the landlord an opportunity to avoid the adverse consequences of its violation of the stay if it agrees to allow the Debtor to belatedly assume the lease. Further, should the landlord eschew this resolution, we will require it to pay the damages awarded to the Debtor before obtaining relief from the automatic stay, thereby allowing the Debtor to have sufficient funds as well as time to relocate.

The matters presently before us are a Motion of the Debtor (1) to hold his landlord, Rudolph Realty (hereinafter referred

to as "Rudolph") in contempt for violating the automatic stay, and (2) to assume its lease with Rudolph nunc pro tunc; and Rudolph's counter-Motion seeking to annul the automatic stay. Both motions were heard by us at a consolidated hearing on July 13, 1988. Testimony was adduced from Jonathan S. Rudolph, the principal of Rudolph, and Boston Cain, the principal of the Debtor. Our factual findings, presented in narrative form as we are considering motions, *see In re Campfire Shop, Inc.*, 71 B.R. 521, 524–25 (Bankr.E.D.Pa.1987), are derived from the evidence presented at this hearing.

The Debtor filed its Chapter 11 bankruptcy case on May 8, 1987. The parties' relationship had commenced prior thereto in December, 1981, when the Debtor began operating its typewriter sales and repair business from the premises in issue, 7 West Oakland Avenue, Doylestown, Bucks County, Pennsylvania, as a sub-tenant of the previous owner of the business. In March, 1982, the Debtor began renting the premises in its own right under an oral lease with Rudolph, at a monthly rental of $250. The rent was increased to $287.50 monthly on January 1, 1987. The parties apparently had an amicable relationship up to this point.

Thereafter, the Debtor fell in arrears in the rent. There was apparently a further attempt to increase the rent, probably on January 1, 1988, which the Debtor resisted.

Counsel for the Debtor in this proceeding, Royland F. Cain, Esquire, maintains a New Jersey office and is the brother of Boston Cain. After filing the petition and schedules, the said Debtor's counsel took no action whatsoever in this case, including preparation of monthly operating statements or the filing of a plan or disclosure statement, until prompted to do so by an Order of this court on November 30, 1987, threatening to dismiss this case if this course of inaction continued. In response, several false starts in filing the plan and disclosure statements followed, despite a series of explanations from the Clerk's Office. Eventually, facsimiles of the requisite documents were filed. After reviewing these filings at a hearing on the propriety of the disclosure statement on June 8, 1988, we allowed the Debtor until July 12, 1988, to file an amended plan and disclosure statement and rescheduled the hearing to consider the disclosure statement for August 9, 1988.

Given the unfamiliarity with bankruptcy law and practice exhibited by the Debtor's counsel throughout these proceedings, it should come as no surprise to learn that Boston Cain was completely unaware that his bankruptcy filing held any impact on his relationship with Rudolph. He therefore filed no motion to assume his lease with Rudolph.

More importantly, he never informed Rudolph of the pendency of the bankruptcy as their relationship deteriorated and Rudolph's actions against him escalated. On February 20, 1988, Rudolph forwarded an "official notice to vacate" the premises within sixty (60) days to the Debtor. There is a dispute as to whether any rent was paid after that notice was sent, but it is agreed that no rent was paid for any months after March, 1988.

When the Debtor failed to vacate the premises in April, 1988, as the notice directed, a landlord-tenant proceeding seeking unpaid rent and possession of the premises was filed by Rudolph in District Justice of the Peace Court 07-2-02. A hearing was scheduled on May 2, 1988, before District Justice Oliver A. Groman of that court. At that hearing, Boston Cain, for the first time, informed District Justice Groman and Rudolph's representative, Harriet Rudolph, the wife of Jonathan S. Rudolph, that he had filed a bankruptcy case.

It is unclear what transpired thereafter. In its motion, the Debtor alleges that another District Justice presided at District Court 07-2-02 thereafter due to the illness of District Justice Groman. Somehow a writ of possession was issued from that court in June, 1988, causing the Debtor to be locked out of the premises on June 20, 1988. There is no dispute that this eviction occurred. Boston Cain testified that, as the Debtor's own property and that of some of its customers remained on the

premises and he was barred from entry, he was unable to conduct the business. As a result, he testified that the Debtor was deprived of its normal profits, which were claimed to net $18,000 to $22,000 per year.

On July 5, 1988, the Debtor filed the instant motion, combining a request for relief on account of Rudolph's violation of the automatic stay with an attempt to assume the Debtor's lease with Rudolph nunc pro tunc. Rudolph countered with a motion, filed July 11, 1988, to annul the automatic stay in light of the Debtor's delay in informing it of the bankruptcy filing and due to its failure to "affirm," i.e., assume, the lease within the 60–day period after the filing of the case, as required by 11 U.S.C. § 365(d)(4). Apparently, Rudolph read the final clause of that Bankruptcy Code section, requiring a debtor-in-possession to "immediately surrender such nonresidential real property to the lessor" if a lease to the property is not assumed within the 60–day period after the bankruptcy filing, as justification for proceeding with the action to dispossess the Debtor without first obtaining relief from the automatic stay even after Rudolph became aware of the bankruptcy filing.

At the close of the hearing on July 13, 1988, we entered an oral Order, reduced to writing on July 14, 1988, directing that Rudolph allow the Debtor to re-enter and peaceably possess the premises no later than 9:00 A.M. on July 14, 1988, pending further Order of this court. We indicated therein that this court would rule on the remaining motions on or before July 27, 1988. Also, we further stated that "[w]e will condition any relief granted to the Debtor upon Rudolph's refusal to allow the Debtor to assume the lease of the premises if all lease payments are made, and we urge the parties to consider some resolution along these lines." Unfortunately, as of July 22, 1988, we were advised that the parties had made no progress in attaining the result that we suggested, requiring our preparation of this Opinion and Order ruling on these motions.

■ We first address Rudolph's efforts to extricate itself from the impact of the automatic stay. As we rather clearly held on analogous facts in *In re Clark,* 69 B.R. 885, 889–91, *modified,* 71 B.R. 747 (Bankr. E.D.Pa.1987), this cannot be easily done. Citing to precedent of the Court of Appeals in *St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir.1982), we concluded, in *Clark,* that the automatic stay attaches and nullifies actions taken in violation of it even if the Debtor fails to notify the creditor proceeding against the Debtor about the filing. 69 B.R. at 889. *See also, e.g., In re Ward,* 837 F.2d 124, 124–26 (3d Cir.1988). Here, the Debtor, though somewhat belatedly, notified Rudolph of the bankruptcy filing at the initial hearing in the state court landlord-tenant proceeding. This course of conduct represented, if anything, more diligence than that exercised by the *Clark* debtor, who failed to mention his filing to even his own counsel in a post-petition lawsuit until after his property was executed upon pursuant to a judgment obtained against him in the lawsuit. *Id.* at 887. Nevertheless, we held that the automatic stay was not, and indeed could not, be waived in even the circumstances present in *Clark. Id.* at 889.

■ Secondly, the fact that the Debtor's actions which allegedly gave rise to Rudolph's cause of action in state court arose post-petition is immaterial to the impact of the stay. Rudolph was obviously attempting to obtain possession of property of the Debtor's estate in seeking to evict the Debtor from his long-time pre-petition tenancy. *See* 11 U.S.C. § 362(a)(3); *In re Whitt,* 79 B.R. 611, 614–15 (Bankr.E.D.Pa. 1987); and *Clark, supra,* 69 B.R. at 890– 91.

We also note the presence of many cases supporting the principle that, even where a debtor-tenant has little or no right to continued possession of a premises, relief from the automatic stay is a precondition to the landlord's regaining possession of some. *See, e.g., In re Sudler,* 71 B.R. 780, 786 n. 1 (Bankr.E.D.Pa.1987); *In re Lewis,* 15 B.R. 643, 644–45 (Bankr.E.D.Pa.1981); and *In re GSVC Restaurant Corp.,* 3 B.R. 491, 494 (Bankr.S.D.N.Y.1980). Thus, Rudolph was

obliged to obtain relief from the automatic stay, pursuant to 11 U.S.C. § 362(d), before proceeding to evict the Debtor, irrespective of the arguably poor quality of the Debtor's right to continued possession of the premises at this juncture.

■ The presence of 11 U.S.C. § 365(d)(4) does not, in our view, advance Rudolph's position vis-a-vis the effect of the automatic stay. We have already squarely held, in *In re Adams*, 65 B.R. 646, 647–49 (Bankr.E.D.Pa.1986), that the last clause of § 365(d)(4), quoted at page 870 *supra*, does not override the impact of 11 U.S.C. § 362(a). Therefore, a landlord must obtain relief from the automatic stay before seeking to dispossess a tenant irrespective of the debtor-tenant's failure to assume, and hence its implicit rejection of, a lease under § 365(d)(4). Accord, *In re Re–Trac Corp.*, 59 B.R. 251, 259 (Bankr.D. Minn.1986). *Cf. In re Mead*, 28 B.R. 1000, 1001, 1002 n. 2 (E.D.Pa.1983); and *In re Dial–A–Tire, Inc.*, 78 B.R. 13, 16 (Bankr. W.D.N.Y.1987). *Contra, In re Criadores de Yabucoa, Inc.*, 75 B.R. 96, 97 (Bankr.D. P.R.1987); and *In re Southwest Aircraft Services, Inc.*, 53 B.R. 805, 808–10 (Bankr. C.D.Cal.1985), *rev'd*, 831 F.2d 848 (9th Cir. 1987). We continue to believe that the language of § 365(d)(4) requiring a debtor to "immediate surrender" an unassumed leasehold should not be read in such a fashion as to permit a landlord to oust a debtor-tenant without recourse to state-law procedures for conducting an eviction which would otherwise be in place.

■ Rudolph argues that, despite these principles, we should annul the stay and condone its actions because of the Debtor's delay in informing it of the bankruptcy and in moving to assume the lease. We acknowledge the presence of a small category of situations where the retroactive relief of annulment of the stay might be appropriate. *See In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984). In that case, the Court of Appeals affirmed not only an Order nullifying the stay retroactively, but dismissing the case entirely. The *Albany Partners* court was motivated by the debtor's lack of good faith in filing its case on the eve of foreclosure, its lack of prospects for successful reorganization, and the "indecisive and evasive" testimony of the debtor's principals in a prior state-court proceeding. *Id.* at 673–74. The language of the court there indicates it sensitivity to the extraordinary nature of the relief which it granted and thus emphasizes the combination of factors which justified the bankruptcy court's exercise of its discretion to take such extraordinary action in that case. *Id.* at 674–76.

Here, there is not even an allegation of a bad faith bankruptcy filing. Certainly, it was not a filing on the eve of a dispossession of the Debtor from its leashold. The Debtor, despite its procedural fumbles, presented a plan and disclosure statement which verify that it has a realistic chance of reorganizing, or at least did before the eviction occurred. There is no evidence that Boston Cain has been evasive with any court. To the contrary, Boston Cain appears to us to be a forthwith individual who was, like Rudolph and both parties' counsel, confused about his legal rights.

■ We therefore conclude that Rudolph's counter-motion must be denied. Furthermore, as of May 2, 1988, Jonathan S. Rudolph admitted, with only some initial hesitation, that he had knowledge of the bankruptcy filing. We concur with the conclusion of Judge Fox that "knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay," expressed in *In re Wagner*, 74 B.R. 898, 904 (Bankr. E.D.Pa.1987). *Accord, In re Aponte*, 82 B.R. 738, 742 (Bankr.E.D.Pa.1988); and *Whitt*, supra, 79 B.R. at 615. Thus, a cause of action for the Debtor's "actual damages, including costs and attorney's fees and, in appropriate circumstances, ... punitive damages" under 11 U.S.C. § 362(h) arises. *Id.* at 902–05. Additionally, Rudolph may be liable for similar damages on the theory that its actions constituted contempt of this court's stay order. *See In re Stephen W. Grosse, P.C.*, 84 B.R. 377, 384–88 (Bankr.E.D.Pa.1988).

We believe that the Debtor's actual damages can be measured by its loss of income for the period in which it was wrongfully

evicted from its place of business, plus some additional figure for the damage to the continuity and reputation of the business caused by these unfortunate events. This is not a case where the Debtor suffered no damage, *compare Whitt, supra,* 79 B.R. at 616, nor is it characterized by the continuous, outrageous pattern found in evidence by Judge Twardowski in awarding a debtor-tenant over $13,000 in damages in *Aponte, supra,* 82 B.R. at 744–47.

We accept the unrebutted testimony of Boston Cain that the net income of the Debtor was about $400 weekly. Four weeks of business were lost entirely. We believe that it is logical to assume that income for at least two weeks more will be lost, and that a reduction of the Debtor's business and income may ensue indefinitely. We shall therefore fix the actual damages due to the Debtor at $2500. We also shall allow the Debtor's counsel to seek reimbursement of costs and reasonable attorneys' fees incurred in prosecuting its motion. No punitive damages shall be awarded.

■ Finally, we approach the Debtor's motion seeking that we allow it to assume the lease nunc pro tunc at this stage. We have great sympathy for the Debtor's contention that § 365(d)(4) is a harsh Code provision, requiring action by the Debtor in a brief period or subjection to the potentially disastrous consequences of loss of the lease of its place of business. We applaud the decisions which have extended the 60–day period as long as the statute allows by measuring it from the date of the bankruptcy filing to the date of the *filing* of a motion to assume the lease as opposed to the date that the court approves such a motion. *See, e.g., In re Victoria Station, Inc.,* 840 F.2d 682, 684–85 (9th Cir.1988); and *In re National Paragon Corp.,* 74 B.R. 180, 181 (E.D.Pa.1987). Similarly, we are impressed with the reasoning of cases allowing a debtor-tenant to impute an assumption of a lease as a result of the non-debtor's landlord's affirmative response to a debtor's actions consistent with assumption. *See In re Pier 5 Management Co.,* 83 B.R. 392, 393–94 (Bankr.E.D.

Va.1988) (landlord estopped from contesting belated motion to assume lease by its refusal to supply information necessary to calculate rent); *In re Ranch House of Orange–Brevard, Inc.,* 78 B.R. 323, 326–27 (Bankr.M.D.Fla.1987) (landlord waives right to contest debtor's belated assumption of lease by accepting rent); and *In re Aneiro,* 72 B.R. 424, 427–28 (Bankr.S.D. Cal.1987) (debtor can assume lease by plan provision).

However, the *Victoria Station* and *National Paragon* decisions are premised upon the Debtor's at least *filing* a motion to assume a lease in the 60–day period. *Pier 5* and *Orange-Brevard* are premised upon the landlord's acting in such a manner as to lull the debtor-tenant into a sense of false security. *Aneiro* posits the presence of a confirmed plan.

Here, the Debtor never made any movement to assume the lease until almost a year *and* 60 days after the bankruptcy filing. This delay was undoubtedly attributable to lack of awareness on the part of the Debtor and its counsel as to the very presence of § 365(d)(4), as this motion followed only in the wake of Rudolph's assertion of that Code section as the basis for its actions. However, it is clear that lack of knowledge of the law is no excuse for failing to adhere to it.

Further, Rudolph took no actions which could have been interpreted as lulling the Debtor into a sense of false security as to Rudolph's willingness to allow the Debtor to assume the lease. To the contrary, Rudolph dispensed seven notices that rent was not paid during 1987, including two which expressly threatened eviction. Rudolph then sent a notice directing the Debtor to vacate the premises on February 20, 1988, and followed this with notices of March 10, 1988, and April 6, 1988, indicating that it expected the Debtor to vacate the premises forthwith. Finally, Rudolph filed an eviction action, obtained a judgment for possession, executed upon it, and evicted the Debtor. Although these actions may all have been legally void, they clearly expressed a desire of Rudolph to have the

Debtor leave the premises, not an implicit invitation to stay.

Finally, no plan has been confirmed, as in *Aneiro*, due partially to the Debtor's fumbling in the process of preparing a disclosure statement.

Under these circumstances, we believe that it would be contrary to the very nature of § 365(d)(4) to allow the Debtor to move to assume the lease nunc pro tunc. We assume the good faith of the Debtor in claiming that it would now be ready, willing, and able to tender all of the past due rent to Rudolph, which would appear to satisfy the requirements of 11 U.S.C. § 365(b). However, unless Rudolph is prepared to allow this motion to be approved at this juncture, we are compelled to rule that it was filed far too late and for that reason must be denied.

■ The benefits to the Debtor which would ensue would Rudolph allow such a dispensation to the Debtor in assuming the lease of the premises are obvious. Equally obvious is the right of Rudolph to refuse to do so. As we indicated we would do in our Order of July 14, 1988, we shall condition any relief to the Debtor on Rudolph's continued refusal to consent to the Debtor's belated assumption of the lease. In other words, if Rudolph agrees to allow the Debtor to assume the lease now, we will not require Rudolph to remit the damages of $2500 plus attorneys' fees to the Debtor. Concomitantly, if Rudolph agrees to this resolution, the Debtor would lose its damages for Rudolph's past wrongful acts, but would recover a right to assume a lease otherwise irretrievably lost to it.

■ We recognize that Rudolph's rejection of this alternative would work a substantial hardship on the Debtor by requiring it to relocate an apparently prosperous business. For this reason, we will require that, if it rejects our suggestion of a tradeoff of rights, Rudolph must remit full payment of the $2500 in damages to the Debtor before it may succeed in any effort to obtain any relief from the automatic stay. We also remind Rudolph that the effect of the stay is to void *all* of its actions directed towards dispossessing the Debtor from the premises to date. Relief from the stay, after appropriate motion, service, and hearing, must precede any action directed towards evicting the Debtor, even the first step of disposition of the requested notice to quit the premises. *See Whitt*, supra, 79 B.R. at 614; and *In re Hub of Military Circle, Inc.*, 13 B.R. 288 (Bankr.E.D. Va.1981). Moreover, if it is successful in obtaining relief from the stay, which must issue from this court and could be denied on equitable grounds, Rudolph must adhere strictly to state law procedural requirements in evicting the Debtor. *See Adams*, supra, 65 B.R. at 649–50.

We will enter an Order consistent with this Opinion.

## ORDER

AND NOW, this 27th day of July, 1988, upon consideration of the evidence presented at a consolidated hearing of July 13, 1988, on the Motion of the Debtor (1) to hold Rudolph Realty (hereinafter referred to as "Rudolph") in contempt for violating the automatic stay and (2) to assume its lease with Rudolph nunc pro tunc; and Rudolph's Motion to annul the stay, it is hereby ORDERED and DECREED as follows:

1. Paragraph one of our Order of July 14, 1988, shall remain in effect unless and until Rudolph obtains relief from the automatic stay per order after motion and pursuant to 11 U.S.C. § 362(d), and subject to paragraph eight *infra*.

2. Rudolph's motion to annul the stay is DENIED.

3. The Debtor's motion is GRANTED in part.

4. All of the proceedings by Rudolph to dispossess the Debtor taken to date are VOID and shall be STRICKEN.

5. Rudolph is determined to be liable to the Debtor, under 11 U.S.C. § 362(h) and for contempt of the automatic stay Order of this court, per 11 U.S.C. § 362(a)(3), in the amount of $2500, plus costs and attorneys' fees which the Debtor may seek by

subsequent motion filed pursuant to paragraph nine *infra*.

6. The Debtor's motion to assume its lease with Rudolph nunc pro tunc is DENIED, unless Rudolph indicates an intention to allow the Debtor to assume the lease pursuant to paragraph seven *infra*.

7. If Rudolph does allow the Debtor to assume the lease, then all of the damages set forth in paragraph five *supra* shall be commuted.

8. Rudolph may be granted relief from the automatic stay only after payment of the $2500 damages to the Debtor.

9. If Rudolph does not allow the Debtor to assume the lease, and the damages pursuant to paragraph five are paid, the parties are directed to confer to resolve the issue of attorneys' fees and costs due to the Debtor's counsel, but, if they are unable to do so, and the Debtor has made a reasonable demand, the attorneys' fees and costs, including compensation on the fee application, if such is necessary, same to be filed within thirty (30) days after payment of the $2500 pursuant to paragraph five or ninety days hereafter, whichever is later. *In re Meade Land and Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975).