In re Oscar STILL, et al., Debtor.

Bankruptcy No. 89–60813.

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

July 16, 1990.

---

* This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

Ben E. Jarvis, Tyler, Tex., for Oscar and Rebecca Still.

Sam B. Cobb, Jr., Tyler, Tex., for American Pipeline Co.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

Comes now for the Court's consideration the First Amended Motion of Debtor, Oscar Still and wife, Rebecca Still, and Texas Timberland Company for contempt against American Pipeline Company, Inc. This opinion constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and disposes of all issues before the Court.

### FACTUAL BACKGROUND

The issue before the Court involves a rancorous dispute between the Chapter 13 Debtors, Oscar and Rebecca Still and Texas Timberland Company, hereinafter known as ("Debtors") and American Pipeline Company, hereinafter known as ("American"). The dispute arose when American filed a Petition for Condemnation on June 6, 1989, in the Rusk County Court at Law in order to secure a gas pipeline easement across Debtors' property. This condemnation will henceforth be referred to as the 1989 con-

demnation. That court appointed special commissioners to hear the condemnation and to award damages. Pursuant to that appointment, a hearing to determine damages was scheduled for June 29, 1989, and the parties were duly noticed. Subsequently, American learned that Debtors had filed a Chapter 13 Petition in Bankruptcy on April 17, 1989. American then filed an Emergency Motion for Relief from the Automatic Stay on June 19, 1989, requesting relief as to the pending condemnation hearing previously scheduled. The Court heard American's Motion on June 28, 1989, and entered an Order Granting Relief for American. To afford counsel for Debtors a requested opportunity to prepare for the ensuing condemnation hearing the Court made its Order Granting Relief effective as of July 14, 1989 (henceforth also to be referred to as the June 28, 1989 order).

In reliance on the Order Granting Relief, the special commissioners rescheduled the condemnation hearing for July 17, 1989, and a copy of the commissioners' Order rescheduling the hearing was served on both Debtor and Debtors' counsel. It is clear from the evidence that the notice of the special commissioners' hearing was sent at a date prior to the effective date of the Order Granting Relief. Debtors strongly take exception to the actions of American in that Debtors contend the notice of the hearing was itself violative of the automatic stay.

At the regularly scheduled hearing on July 17, 1989, the condemnation board awarded damages to Debtor. Although duly noticed, Debtors chose not to appear due to their contention that the condemnation hearing was in violation of the automatic stay. However, on July 20, 1989, Debtors' filed a Plea in Abatement in the Rusk County Court at Law. Between this time and the regularly scheduled hearing date of the Plea in Abatement, America laid its pipeline across Debtors' property. On October 20, 1989, the Rusk County Court at Law granted Debtors' Motion to Abate the Condemnation asserting that the automatic stay voided ab initio all actions prior to the effective date of the Order of June 28, 1989, granting relief.

In response to the state court ruling, American filed a Motion to Annul the Automatic Stay that was in effect at the time of the alleged violation. The Court denied American's Motion on November 21, 1989, without finding whether the actions taken prior to July 14, 1989, were void or merely voidable. On November 22, 1989, Debtors' filed state court actions against American seeking damages for trespass and injunctive relief. On December 12, 1989, the injunctive relief was granted.

On January 10, 1990, American filed a new condemnation action in the Rusk County Court at Law which was similar to the 1989 condemnation action except that it was assigned a new case number. This action will be henceforth will be referred to as the 1990 condemnation. At a regularly scheduled hearing on January 25, 1990, the condemnation board repeated its holding in the 1989 condemnation in awarding damages. Although service was effected, Debtors and their attorney failed to attend. On May 18, 1990, Debtors moved the Rusk County Court at Law to dismiss the 1990 condemnation due to their contention that the Order of July 14, 1989, did not allow American to initiate any suit other than the 1989 condemnation. In brief, Debtors contend that the Order of July 14, 1989, was drafted only to allow the continuation of the 1989 action which they contend was in violation of the automatic stay due to the sending of notice prior to the effective date of the Order. Since the Order granting relief from the automatic stay did not specifically address the bringing of the 1990 condemnation action, Debtors similarly contend that this filing is also in violation of the Automatic Stay.

On June 7, 1990, Debtor filed a First Amended Motion for Contempt requesting that this Court hold American in contempt and award money damages for dilatory litigation tactics pursuant to 11 U.S.C. § 362(h).

## MEMORANDUM OF LAW

By statute, the filing of a petition in bankruptcy operates as an automatic stay

of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceedings against the Debtor ..." 11 U.S.C. § 362. It is Debtors contention that the July 3, 1989, Order of the condemnation board setting the hearing for July 17, 1989, violated 11 U.S.C. § 362(a)(1) since the Order of Relief from the Stay was not yet in effect.

At this juncture, it is noted that Debtors' contention is technically correct. At the June 28, 1989, hearing granting relief from the automatic stay, the Court, in deference to Debtors' counsel's wishes to have additional time to prepare for the ensuing condemnation action, made its order effective July 14, 1989, so that the original condemnation hearing scheduled for June 29, 1989, would have to be continued at least two weeks. Thus, while American may have in effect jumped the gun on the issuance of its notice, this Court is of the opinion that such action was not in contravention of the spirit of the Court's June 28, 1989, Order allowing Debtor additional preparatory time. The Court intended that Debtors' counsel receive additional time and the Court takes notice of the fact that nineteen (19) days elapsed between the date of the Order of Relief and the rescheduled condemnation hearing. In addition, the Court takes note of the fact that the rescheduled condemnation hearing took place three (3) days after the Order seeking relief from the Stay had been in effect.

■ However insignificant in effect the Court views the violation of the automatic stay by American, the Court is still charged with evaluating the violation pursuant to the standards of 11 U.S.C. § 362(h). In order to enforce the automatic stay and prevent violations thereof, the Code provides that willful violations of the automatic stay are compensable to the extent of actual damages including cost and attorneys' fees. 11 U.S.C. § 362(h). The term willful is generally defined in terms of either deliberate or intentional acts on the part of the offending party. *In re Mewes,* 58 B.R. 124 (Bkrtcy.D.S.D.1986). In this regard, it cannot be denied that

American's sending of its premature notice was, under this definition, a willful violation of the Automatic Stay. However, parties alleging willful violations of the automatic stay are charged with demonstrating actual damages. Failure to proffer credible evidence of damages results in an inability for Debtors to qualify for damage awards. *In re Whitt,* 79 B.R. 611 (Bkrtcy. E.D.Pa.1987) (Holding that de minimus violations of the stay are not compensable without a showing of actual damages); *In re Hill,* 19 B.R. 375 (Bkrtcy.N.D.Tex.1982).

■ At a regularly scheduled hearing, this Court heard testimony from the Debtor and other parties referring to the damages Debtor had suffered as a result of American's violation of the automatic stay. The Court found this testimony to be wholly speculative and lacking in credibility. Debtor's testimony that he suffered approximately $1,400.00 in additional actual damage over and above the condemnation award (to land and trees); $1600.00 in lost compensation for time spent and $3000.00 in appraisal fees was not viewed as credible by this Court. The Court did take judicial notice of the fact that Debtors' primary damages were the approximately $20,000.00 he had incurred in legal expenses. The vast disparity between the actual damages allegedly suffered ($1400.00) and the expenses related to the recovery of said damages ($23,000) gives, in the opinion of this Court, new meaning to the phrase "killing an ant with an elephant gun". In that this Court does not find that Debtor suffered any damages over and above the condemnation award, this Court is unwilling to award any of the damages requested by Debtor. *See Matter of Schewe,* 94 B.R. 938 (Bkrtcy.W.D.Mich.1989) (Damages for willful violations of the automatic stay cannot be speculative). Furthermore, the Court is also of the opinion that the Debtor's prosecution of a de minimis violation of the stay should not be ennobled by the award of attorney's fees. The Court is in accordance with the holding in *In re Whitt, supra,* that "costs and attorney's fees, by the terms of § 362(h), are allowable only to embellish 'actual damages....'" *Id.* at 616. Therefore, since this Court finds no

actual damages suffered by Debtor, the Court correspondingly will not award attorney's fees or costs associated with the prosecution of this action.

 The Court must now address the issue of whether the institution of the 1990 condemnation action was in violation of the automatic stay. The arguments of Debtor rest primarily on their contention that the July 14, 1989, Order Lifting the Automatic Stay pertained only to the continuation of the 1989 action. Since they maintain that the 1990 action is distinct, its institution is correspondingly in violation of the stay. In effect, Debtors would have American filing a new Motion for Relief of the Automatic Stay pertaining to a condemnation action affecting the same property and parties. The Court is of the opinion that this semantical argument is ill-founded. The Order of Relief was directed to the condemnation action of American vis-a-vis the Debtors. It is clear from a review of the record as well as the testimony of the parties that the only reasonable interpretation of the Order Granting Relief was that the condemnation action would press forward upon the lifting of the stay. There was no demonstrable proof of the contrary proffered. In sum, Debtor would first have this Court hold that the Order Lifting the Stay applied to the 1989 condemnation but since the condemnation action was filed and notice of proposed hearing (previously continued) was issued prior to the effective date of the Order the entire proceeding was void. Similarly, Debtor would argue that American's fumbling attempts to rectify its technical violation through the refiling of the same lawsuit (after the effective date of the June 28, 1989 order) is also void as violative of the stay because no Order lifting the stay as pertaining to the 1990 condemnation had been entered even though the proof indicates that the difference between the 1989 and 1990 condemnations was purely form rather than substance.

The Court finds Debtor's proposals regarding the viability of the 1989 condemnation not only to be inconsistent but additionally such an interpretation would place American in an unintended Catch–22 situation. If, as Debtor contends, all actions taken prior to the June 28, 1989 Order of Relief are void what does Debtor intend the Order to accomplish? If all actions taken prior to the June 28, 1989 Order are void as violating the stay American would have no option but to refile the condemnation action (1990 condemnation) since the 1989 condemnation is, as Debtor contends, void in toto. Yet, American's refiling of the action (1990 condemnation) draws Debtor's complaints that the stay has once again been violated due to the failure to American to seek relief from the stay in order to file what is essentially the same case. This obviously puts American in a damned if you do, damned if you don't scenario that was never intended by the Court. The Court can only come to the conclusion that Debtor's interpretation of the June 28, 1989 Order of Relief would render it nugatory since through Debtor's interpretation, the June 28, 1989 Order cannot relate to either the 1989 or the 1990 condemnation. As such, it is clear to this Court that Debtors' actions are motivated solely by an inequitable interest in coercing a more favorable settlement in the underlying condemnation action rather than seeking recovery through the Court for actual damages suffered as a result of a violation of the stay. The maxims of the Bankruptcy Code would not be served by giving effect to Debtors' protests.

 However, even if the Court, in arguendo, entertained and accepted Debtors contention that the 1990 condemnation was violative of the automatic stay, the Court would have no hesitancy in following the holding in *Sikes v. Global Marine, Inc.,* 881 F.2d 176 (5th Cir.1989) in holding that actions taken in violation of the automatic stay are merely voidable not void. As such, assuming facts most favorable to the Debtor, this Court would annul the automatic stay as to any violation stemming from the 1990 condemnation and validate the actions of American. 11 U.S.C. § 362(d).

Therefore, it is the ORDER of the Court that Debtor's First Amended Motion for Contempt is DENIED, as to all damages

and attorneys' fees sought. To the extent that Debtors' Motion for Contempt seeks additional remedies, those remedies are also DENIED.

IT IS SO ORDERED.