In re John J. KORESKO, V, Bonnie
Jean Koresko, Debtors.

John J. KORESKO, V, Bonnie Jean
Koresko, Plaintiffs,

v.

CHASE MANHATTAN FINANCIAL SER-
VICES, INC., Manheim Auto Auction,
American Lenders Service Co., Inc., De-
fendants.

Bankruptcy No. 87–06424S.
Adv. No. 88–0430S.

United States Bankruptcy Court
E.D. Pennsylvania.

Sept. 30, 1988.

As Amended Nov. 4, 1988.

Carl N. Weiner, Lansdale, Pa.

John Shawde, Miami, Fla.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The instant adversary proceeding causes us to explore several issues which arise when borrower-debtors file a Chapter 13 bankruptcy case in the midst of a secured lender's efforts to repossess and sell the Debtors' personal automobile due to a payment delinquency. We conclude that, as long as the sale of the vehicle has not been consummated prior to the filing, the Debtors are empowered to recover the vehicle if they adequately protect the interests of the secured lender, and that clearly their interest in the auto is property of the estate. In any event, since recovery of the vehicle is no longer practical here, the Debtors' causes of action to recover damages for violations of state law in the repossession and sale process, as well as any claims of violation of the automatic stay in the process, are property of the estate. Thus,

such claims are "related" to the Debtors' bankruptcy case and within the jurisdiction of this court.

Given the stipulation of the Defendants that we may determine this proceeding, even if it is non-core, we proceed to enter judgment in favor of the Debtors on two of their claims. We hold the Defendant–lender only liable for $14,289.03 in statutory damages for selling the Debtors' vehicle without providing them prior written notice and $100.00 in damages for failing to provide the Debtors with requisite post-repossession notice. We decline to award damages against any of the Defendants for violation of the automatic stay in effecting a post-petition sale of the vehicle because of the Debtors' failure to clearly establish that any of the Defendants had knowledge of their bankruptcy when they acted or that they suffered damages thereby, and because the damages awarded on the other counts appear quite sufficient. Due also to the liberal recovery of damages by the Debtors for the notice violations and considering their lack of proof of financial loss due to the Defendants' actions, we make no further award of damages to them.

## B. PROCEDURAL HISTORY

The Debtors, a practicing attorney acting as counsel for the Debtors and his wife, filed the underlying Chapter 13 case on December 24, 1987. This adversary proceeding was filed on March 21, 1988. Just prior to the date of the second listing of this proceeding for trial on July 7, 1988, the parties agreed to submit the matter on a Stipulation of Facts, to be filed on or before August 1, 1988, and Briefs to be submitted by the Debtors and the Defendants, on or before August 22, 1988, and September 12, 1988, respectively. Although the Stipulation of Facts was filed one day late and was supplemented thereafter, the Briefs were timely filed and the case was submitted as projected. These factual stipulations make it unnecessary for us to render Findings of Fact, and permit us to resort to the narrative form in addressing the rather interesting issues presented.

## C. FACTS

The contract underlying this transaction is a Security Agreement of December 30, 1983, pursuant to which the Debtors, then residents of Miami, Florida, financed the purchase of a new 1984 Porsche automobile. In this transaction, the Debtors received the sum of $22,934.50 from Defendant CHASE MANHATTAN FINANCIAL SERVICES, INC. t/a CHASE MANHATTAN OF FLORIDA (hereinafter referred to as "Chase") and finance charges of $11,995.58 were imposed to finance this sum received over six (6) years. Total payments of $34,930.08 were to be made in 72 installments of $485.14. The Debtors subsequently relocated to the Philadelphia, Pennsylvania area. We are reluctant to paraphrase and therefore quote directly from the salient portions (paragraphs 10–27) of the parties' Stipulation of Facts:

10. As of September 11, 1987, Plaintiffs [also referred to herein as "the Debtors"] were in arrears under the Note [accompanying the Security Agreement] in the amount of $2,475.75 (five payments).

11. On Thursday, September 24, 1987, Howard Wiley, an employee of Defendant [AMERICAN LENDERS SERVICE COMPANY, INC., a company engaged in the repossession of automobiles in the Philadelphia area, to which the Debtors had relocated (hereinafter "ALSC")], telephoned Plaintiff John J. Koresko, V at his place of employment, informed Plaintiff that Wiley was enforcing the security interest of Chase, and asked Plaintiff to voluntarily surrender the automobile.

12. Plaintiff informed Wiley that he would not surrender the automobile.

13. On September 25, 1987, Defendant Chase, by its employee Bob Calder, caused ALSC, by its employee Howard Wiley, to repossess Plaintiff's automobile from Plaintiff's place of employment in Norristown, Montgomery County, PA.

14. The costs of repossession were $438.35.

15. On the date [of] repossession, the automobile was transported to and thereafter held at ALSC's place of business, 338 Gov. Printz Blvd., Lester, Delaware County, Pennsylvania, until Chase, by its employee Robert (Bob) Calder, ordered ALSC to deliver the automobile to [Defendant MANHEIM AUTO AUCTION (hereinafter "MAI")], Route 72, Manheim, PA 17505, on or about January 11, 1988, after the automatic stay was in effect.

16. On September 24, 1987, Defendant ALSC sent a letter to said Bob Calder advising him of the repossession. A copy of said letter is attached hereto as Exhibit "B".

17. John J. Koresko, V contacted ALSC on September 26, 1988 [sic], and independent of any information from Defendants, located and photographed the vehicle on September 27, 1988 [sic].

18. Defendants ALSC and MAI never furnished Plaintiffs with any written notice, either in person or by mail, concerning collection of Chase's debt, the repossession, or requirements for redemption of the automobile. Defendant Chase has no record of sending any such written notice to Plaintiffs. Plaintiffs received no such written notice from Chase, MAI, or ALSC.

19. John J. Koresko, V spoke to both Todd Reed and Bob Calder, employees of Chase who were responsible for the repossession, during telephone calls made to Chase in September, 1987, and January, 1988.

20. On September 25, 1988, [sic], and in January, 1988, Chase informed John K. Koresko, V that all communications concerning the automobile should be referred to John Shawde, Esquire, of Mershon, Sawyer, Johnston, Donwoddy & Cole, attorneys with offices in Miami, Florida.

21. Prior to instituting the present action, Plaintiffs demanded from Defendants and their counsel that they turn over to the Trustee or Debtors said automobile, which Plaintiffs alleged to be property of the estate, but the Defendants refused to turn over said property or disclose any information relating to the whereabouts of said property, except that an employee of ALSC informed Plaintiffs in January, 1988 that the automobile had been removed to MAI.

22. The automobile had a fair and reasonable value of approximately $11,000 at the time of filing of the Chapter 13 Petition, which was less than the principal balance of the Note and the secured claim of Chase listed on Plaintiffs' Chapter 13 Petition and Plan.

23. Between January 11, 1988 and February 12, 1988, MAI took various steps to prepare the automobile for sale.

24. Plaintiffs did not at any time after default sign a statement renouncing or modifying their rights to a sale of the automobile.

25. Defendants did not send to Plaintiffs notice of the time and place of any public sale, or notification of the time after which any private sale or other intended disposition of the automobile would take place.

26. Neither Chase, ALSC or MAI ever received a written request from Plaintiffs to cure any default or redeem the automobile.

27. The automobile was sold at a wholesale auto auction by Joseph Lyons for MAI on February 12, 1988. MAI remitted $9,450 of proceeds to Chase.

We can infer that, since payments were made for only 40 months at most out of 72 months of payments at $485.14, that at least thirty-two (32) payments of $485.14 were due, or a sum of at least $15,500.00 was due on the contract at the time of

repossession and sale, leaving a deficiency in excess of $6,000.00.

### D. THIS COURT HAS JURISDICTION TO HEAR THIS MATTER AND BY AGREEMENT OF THE PARTIES WILL DETERMINE IT

The initial issue which the parties dispute is the jurisdiction of this court to hear at least some of the five counts of the Debtors' Complaint, which are as follows:

I. Turnover of the value of the vehicle.

II. Violation of the automatic stay in the sale process.

III. Violation of 13 Pa.C.S. § 9504(c) of the Pennsylvania Uniform Commercial Code (hereinafter "UCC").[1]

IV. Violation of 69 P.S. §§ 623, 625 of the Pennsylvania Motor Vehicle Sales Finance Act, 69 P.S. § 601, et seq. (hereinafter "MVSFA").

V. Violation of 15 U.S.C. § 1692g of the federal Fair Debt Collection Practices Act (hereinafter "FDCPA").

The parties agree that Counts I and II are core proceedings, and we agree with the Defendants that the Debtors have failed to prosecute their asserted claims under Count V.[2] The Debtors contend that

Counts III and IV are core claims pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (b)(2)(K).[3] The Defendants contend that they are "unrelated" claims, but stipulated that, if they were deemed "related" and non-core, this court may determine them. *See* 28 U.S.C. § 157(c)(2). This stipulation reduces our burden to that of merely ascertaining whether these claims are "related" or not because, whether or not they are non-core, we are thus empowered to determine them. *Id.*

Both parties embark on a rather convoluted analysis of whether and when the Debtors' right to redeem the vehicle, pursuant to 69 P.S. § 625 B, expired, and the impact of the Debtors' redemption right upon the vehicle's status as property of the Debtors' estate. Since these issues recur in many consumer cases before us, we address them here despite their technical lack of impact on our final disposition of the jurisdictional issue here.

■ The cases on which the Defendants rely most heavily are *In re Weiser*, 44 B.R. 224 (Bankr.M.D.Pa.1984); *In re Morgan*, 23 B.R. 700 (Bankr.E.D.Pa.1982); *In re Lloyd*, 18 B.R. 624 (Bankr.E.D.Pa.1982); and *In re Haines*, 10 B.R. 856 (Bankr.E.D. Pa.1981). In *Weiser*, the court read 69 P.S.

---

**1.** The parties implicitly agree that the events described in the Complaint are governed by Pennsylvania law. This is not an irrational conclusion, since, although the underlying contract was made in Florida, it contains no choice of law provision and the crucial repossession and resale of the vehicle, as well as the filing of this case, occurred in Pennsylvania. We therefore accept the parties' agreement on the choice of law, noting that the interests and significant contacts of this state with the transaction appear to outweigh those of any other jurisdiction. *See Jones & Laughlin Steel Corp. v. Johns Manville Sales Corp.*, 626 F.2d 280, 283–84 (3d Cir. 1980); and *In re Windsor Communications Group, Inc.*, 80 B.R. 712, 722 (Bankr.E.D.Pa. 1987).

**2.** This decision on the part of the Debtors appears to have been a wise one. As a first party creditor, Chase is not subject to the FDCPA. 15 U.S.C. § 1692a(6). There is no evidence that either ALSC or MAI meet the definition of "debt collectors" either, *id.*, or that any provisions of the FDCPA were violated by them. *Compare In re Littles, Littles v. Lieberman*, 90 B.R. 669, Bankr. No. 87–00092S, Adv. No. 87–0247S

(Bankr.E.D.Pa. Recommended Opinion, Feb. 12, 1988), *modified,* 90 B.R. 700, Misc. No. 88–0083 (E.D.Pa. Sept. 7, 1988); and *In re Crossley, Crossley v. Lieberman,* 90 B.R. 669 Bankr. No. 87–02394S, Adv. No. 87–0569S (Bankr.E.D.Pa. Recommended Opinion, Feb. 12, 1988), *modified,* 90 B.R. 682 Misc. No. 88–0084 (E.D.Pa. July 13, 1988).

**3.** These Code sections read as follows:
(2) Core proceedings include, but are not limited to—

. . . . .

(B) allowance or disallowance of claims against the estate or exemptions from property for the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

. . . . .

(K) determinations of the validity, extent, or priority of liens; ...

§§ 623 D and 626 A [4] of the MVSFA as providing the buyer with a 15–day right to redeem a motor vehicle, after which the buyer's rights in the vehicle were eliminated entirely and thus the vehicle was no longer property of the debtor's estate which could be recovered in a turnover proceeding. *Haines, Lloyd,* and *Morgan* all similarly conclude that the end of the 15–day period normally signals the end of the buyer's right to redeem, but all find, contrary to the result in *Weiser,* that the debtor's estate retains some interest in the vehicle even after the redemption period expires. In *Haines,* the court allowed the debtor to redeem the vehicle after the 15–day period, on the ground that the secured lender waived strict adherence to this redemption period. In *Morgan,* the court holds that 11 U.S.C. § 108(b)(2) extended the redemption period for sixty (60) days after the order for relief.

The decision in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), which came after all of the above decisions except *Weiser,* made clear that the Bankruptcy Code had expanded the concept of property of the estate to include property seized by even such a tenacious creditor as the Internal Revenue Service (hereinafter "IRS"). *Id.* at 204–05, 103 S.Ct. at 2313–14. Further-

more, the court held that the property seized was subject to turnover to the debtor's estate pursuant to 11 U.S.C. § 542(a), provided that the estate adequately protected the security interest of the IRS. *Id.* at 205–09, 211–12, 103 S.Ct. at 2313–16, 2316–17. After *Whiting Pools,* similar reasoning has been regularly employed in cases involving motor vehicles to require secured lenders to turn over vehicles repossessed prior to bankruptcy, the obligations concerning which were targeted for cure in a Chapter 13 or Chapter 11 plan. *See, e.g., In re Caldwell,* 81 B.R. 164 (Bankr.M.D. Ga.1988); *In re Tel–A–Communications Consultants, Inc.,* 50 B.R.. 250 (Bankr.D. Conn.1984); *In re Starnes,* 44 B.R. 1020 (Bankr.E.D.Pa.1984); *In re Attinello,* 38 B.R. 609 (Bankr.E.D.Pa.1984); and *In re Radden,* 35 B.R. 821 (Bankr.E.D.Va.1983). The reasoning employed in these cases, the precursor of which was Judge King's decision in *In re English,* 20 B.R. 877 (Bankr. E.D.Pa.1982), embraces reasoning rejected in *Weiser, Morgan, Lloyd,* and *Haines.*

We expressly accepted the reasoning of the later, post–*Whiting Pools* cases in *In re Ford,* 78 B.R. 729, 736–37 (Bankr.E.D. Pa.1987). Moreover, with all due respect, we believe that the *Weiser, Morgan,* and *Haines* decisions read 69 P.S. §§ 623 D, 625 B and 626 A [5] incorrectly. The 15–day

---

**4.** These provisions of the MVSFA provide as follows:

§ 623 D. When repossession of a motor vehicle, which is the subject of an installment sale contract, is effected otherwise than by legal process, the holder shall immediately furnish the buyer with a written "notice of repossession" delivered in person, or sent by registered mail directed to the last known address of the buyer. Such notice shall set forth the buyer's rights as to reinstatement of the contract, if the holder extends the privilege of reinstatement and redemption of the motor vehicle, shall contain an itemized statement of the total amount required to redeem the motor vehicle by reinstatement or payment of the contract in full, shall give notice to the buyer of the holder's intent to re-sell the motor vehicle at the expiration of fifteen (15) days from the date of mailing such notice, shall disclose the place at which the motor vehicle is stored, and shall designate the name and address of the person to whom the buyer shall make payment, or upon whom he may serve notice.

§ 626 A. When the repossessed motor vehicle under an installment sale contract is not

redeemed by the buyer either by termination or reinstatement of the contract within the fifteen (15) day notice of redemption period, the buyer shall forfeit all claim to such motor vehicle and collateral security.

**5.** Section 625 B, not reproduced at page 695 n. 4 *supra,* states as follows:

B. During such fifteen (15) day period the buyer may redeem the motor vehicle and terminate the contract by payment or tender of payment to the holder of the following amounts, subject to the conditions hereinafter indicated.

1. When default at the time of repossession was less than fifteen (15) days, the amount of the unpaid time balance, plus the amount of any accrued default charges authorized by this act, plus any other amount lawfully due under the contract, excluding costs of retaking, repairing and storage, less rebate of unearned finance charge.

2. When default at the time of repossession exceeded fifteen (15) days, the amount of the unpaid time balance, plus the amount of

period prescribed by these sections appears to us to be the minimum period that a buyer is accorded to redeem a repossessed vehicle. Logically, the maximum period to which the right to redeem should extend is until the vehicle is actually sold by the secured lender. The passage in § 626 A regarding a "forfeit" by the buyer of his claim after the running of the redemption period is included, we believe, merely to eliminate the buyer's rights in the vehicle when the period of redemption is actually terminated by sale, not to cut off the buyer's rights upon the mere running of the 15–day period after dispatch of the notice, whether a sale has been conducted or not. *Cf. Haines, supra* (secured lender can waive 15–day deadline by extending the period of redemption).

The operation of two other comparable statutory schemes support the interpretation of the MVSFA set forth herein. The first is the UCC, at 13 Pa.C.S. § 9506, which clearly provides that a debtor can redeem secured property at any time before the secured party disposed of the collateral. It is established in the Superior Court's decision in *Industrial Valley Bank & Trust Co. v. Nash,* 349 Pa.Super. 27, 44–45, 502 A.2d 1254, 1263–64 (1985), that the MVSFA and UCC are to be construed *in pari materia* and hence as being consistent with each other whenever possible. Also, we note that, in the Pennsylvania law pertaining to care of mortgage obligations, the mortgagor is given a 30–day period to cure a default, but the right to cure extends to one hour before a sheriff's sale. *See* 41 P.S. §§ 403(a), 404(a). In light of the strong policy of Pennsylvania law against forfeitures, *see In re Sudler,* 71 B.R. 780, 785 (Bankr.E.D.Pa.1987), and

cases cited therein, it seems logical to read the MVSFA as allowing the borrower to retain a right to avoid a forfeiture of rights in the vehicle up to the date of sale.

■ Moreover, even if we read §§ 623 D, 625 B and 626 A like the *Weiser, Morgan,* and *Haines* courts, the Defendants' argument that the redemption period was cut off here would fail. As the Debtors point out, the 15–day period referenced in §§ 625 B and 626 A is triggered by the sending of a written notice of repossession, pursuant to §§ 623 D and 625 A.[6] It is the 15–day period "after mailing of notice of repossession" set forth in § 625 A to which §§ 625 B and 626 A refer. Here, given the admission of ALSC that it sent no written notices whatsoever to the Debtors; the absence of any notices by Chase; and the Debtors' lack of receipt of any such notices, we infer that no notice pursuant to § 623 D was sent. See pages 699–700 *infra.*

■ We therefore conclude that, as of the date of the sale of the vehicle on February 12, 1988, the Defendants had failed to cut off the Debtors' right to redeem their vehicle. In *In re Willis,* 34 B.R. 451, 453–54 (Bankr.M.D.N.C.1983), the court concluded that, where a sale of a vehicle is effected prematurely and therefore illegally, the debtor retained both legal and equitable interests in the vehicle, and the vehicle was definitely property of the Debtors' estate. We believe that this reasoning is correct, and that, therefore, under the instant facts, the Debtors' rights in the vehicle in issue are clearly property of their estate.

■ Even if we concluded that the Debtors had lost all interest in the vehicle prior

---

any accrued default charges authorized by this act, plus costs of retaking, repairing, repossessing and storing authorized by this act, plus any other amount lawfully due under the contract, less rebate of unearned finance charge.

**6.** The Section reads as follows:

A. When repossession of a motor vehicle which is the subject of an installment sale contract is effected within the Commonwealth of Pennsylvania otherwise than by legal process, the holder shall retain such repossessed

motor vehicle within the county in which it was retaken for a period of fifteen (15) days after mailing of notice of repossession to the buyer. If such repossession is made outside of the Commonwealth of Pennsylvania, the motor vehicle, at the option of the holder, may be retained in the vicinity of retaking for such fifteen (15) day period or brought back to the county in Pennsylvania in which it was originally sold to the buyer under such contract and retained in such county for such fifteen (15) day period.

to their bankruptcy filing, we do not believe that this fact would preclude the characterization of the Debtors' causes of action set forth in Counts III and IV of their Complaint as "related" to their bankruptcy case. A recent, annotated discussion relevant to the issue at bench is presented by our district court in affirming this court's reasoning as to this issue in *Crossley v. Lieberman, supra,* 90 B.R. at 690–92, and *Littles v. Lieberman, supra,* 90 B.R. at 704–05.

Both *Crossley* and *Littles* involved proceedings by Chapter 7 debtors to recover damages for pre-petition violations of the FDCPA, a type of claim which, ironically, the Debtors here have abandoned. The only relationship of the claim in issue in those proceedings which was contended to be related to the respective debtors' bankruptcy cases was that they were pre-petition causes of action which were property of the debtors' respective bankruptcy estates. The district court nevertheless had no difficulty in concluding that, for this reason alone, the proceedings were "related" to the debtors' respective bankruptcy cases, pursuant to 28 U.S.C. § 157(c)(1).

The relationship of this proceeding to the instant bankruptcy case is more closely "related" than the proceedings in issue in *Crossley* and *Littles* to their respective underlying bankruptcy cases in several respects. First, this is a Chapter 13 case, and, as a result, all property that the Debtors acquire after the commencement of the case, during its pendency, including their recovery of any damages here, is property of their estate. *Compare* 11 U.S.C. § 1306(a)(1) *with* 11 U.S.C. § 541(a). Secondly, the actions of the Defendants in issue, at least in part, occurred post-petition and implicate specific sections of the Bankruptcy Code, *e.g.,* 11 U.S.C. §§ 362(h) and 542(a). No such relationship of the claims there to other claims clearly related to the respective bankruptcy cases existed. Finally, given the amount of the Debtors' recovery, it seems clear that at least some of the proceeds recovered by the Debtors herein will be distributed to creditors. In *Crossley* and *Littles,* as we pointed out in our Recommended Opinion of February 12, 1988, any recoveries by the debtors there

were unlikely to end up in the pockets of their creditors. Recommended Opinion, *supra,* 90 B.R. at 674.

We therefore conclude, rather easily, that the claims set forth in Counts III and IV of the instant proceeding are "related" to the Debtors' bankruptcy case, and that we consequently have jurisdiction to hear them. As indicated at page 694 *supra,* the agreement of the parties that we can determine it makes it unnecessary for us to decide the merits of the Debtors' doubtful assertions that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) or § 157(b)(2)(K).

### E. THE DEBTORS ARE ENTITLED TO SUBSTANTIAL STATUTORY DAMAGES ON THEIR UCC CLAIM

■ We begin our exploration of the merits of the Debtors' various claims by analyzing what is clearly the most lucrative of the Debtors' claims, *i.e.,* their Count III claim for statutory damages under the UCC. In light of the decision in *Nash, supra,* it is clear that the requirements and penalties of Article 9 of the UCC apply irrespective of the presence of somewhat more detailed provisions, as to certain points, in the MVSFA.

The operative sections of the UCC are 13 Pa.C.S. §§ 9504(c) and 9507(a) which provide, in pertinent part, as follows:

§ 9504(c). Manner of disposition.... Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale....

§ 9507. Liability of secured party for failure to comply chapter.

(a) General rule.—If it is established that the secured party is not proceeding in accordance with the provisions of this

chapter disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this chapter. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus 10% of the principal amount of the debt or the time price differential plus 10% of the cash price.

In paragraph 25 of the parties' Stipulation of Facts, quoted at page 693 *supra,* the Defendants unequivocally admit that they did not provide the notice contemplated by § 9504(c). *Compare* Stipulation of Facts, ¶ 18, page 693 *supra* (Chase hedges on whether "notice of repossession" pursuant to 69 P.S. § 623 D was dispatched to the Debtors). *But see* pages 699–700 *infra* (we hold that the "notice of repossession" was not provided to the Debtors either).

The only defenses articulated by the Defendants as to this claim are as follows: (1) § 9504(c) does not require a written notice; (2) The Debtors received adequate *oral* notice of the pending disposition of their vehicle; and (3) If any violations of the UCC occurred, they were too "technical" to merit the whopping penalty which attaches under the instant facts. We conclude that the failure to provide written notice of the sale of the auto to the Debtors is in itself sufficient to trigger the statutory penalties of § 9507(a), which conclusion effectively disposes of all of the Defendant's defenses. However, we further conclude that, independently, none of these defenses have any merit.

■ Both this court, in *In re United Nesco Container Corp.,* 68 B.R. 970, 972 n. 2 (Bankr.E.D.Pa.1987); and the Pennsylvania Superior Court, in *Delahanty v. First Pennsylvania Bank,* 318 Pa.Super. 90, 138, 464 A.2d 1243, 1267 (1983), have squarely held that § 9504(c) mandates that

notice of disposition of collateral such as a motor vehicle be *written.* Thus, in *Delahanty,* the court states that "there was no notice of sale sent ... no notice of sale published, but rather notice was made 'by word of mouth,'" which the court finds patently insufficient. *Id.* In *United Nesco,* although admittedly in dictum, we stated that "we do not logically see how oral notice can be said to be 'sent,'" 68 B.R. at 972 n. 2, as is required by § 9504(c). Many other courts have concurred. *See, e.g., Savings Bank of New Britain v. Booze,* 34 Conn.Supp. 632, 382 A.2d 226, 228 (1977); *Bondurant v. Beard Equipment Co.,* 345 So.2d 806, 807–08 (Fla.App.1977); *Hall v. Owen County State Bank,* 175 Ind.App. 150, 370 N.E.2d 918, 925 (Ind.App.1977); and *Umbaugh Pole Building Co. v. Scott,* 58 Ohio St.2d 282, 390 N.E.2d 320, 326 (1979).

Moreover, assuming *arguendo* that oral notice of the disposition *would* have sufficed, the Defendants failed to provide *any* notice, oral or otherwise, to the Debtors concerning the time and place of the vehicle's disposition. Instead, the only information relating to the disposition of the vehicle that was given to the Debtors regarding its whereabouts, per the Stipulation of Facts, was that it had been removed from ALSC's facility in Lester, Pennsylvania, to MAI's facility in Manheim, Pennsylvania, apparently to be sold at some indeterminate date. *See* Stipulation of Facts, ¶ 21, at page 693 *supra.*

■ It therefore appears to us that, far from being "technical," by any definition of the term, the violation of both the letter and spirit of § 9504(c) which transpired here was complete. Unfortunately for Chase, which we alone held liable, the vehicle which was repossessed was an expensive Porsche. We agree with the Debtors that § 9507(a) fixes the Debtors' statutory damages at the sum of the "credit service charge" or finance charge of $11,995.58 in the transaction, plus ten (10%) percent of the principal amount of the debt in the transaction of $22,934.50, or $2,293.45, which comes to a total sum of $14,289.03.

This figure may seem excessive, in light of the apparent inability of the Debtors, one of which was a presumptively knowledgeable attorney, to do much to forestall the sale even had they known about it or to prove actual damages as a result of the failure to provide the requisite notice. However, the purpose of the notice of disposition of collateral is not merely to advise the buyers of the termination of their title (and, we hold, their redemption rights in the motor vehicle), but also to protect them from unfair imposition of a deficiency claim by allowing them to attend or bring other potential buyers to the sale and thus prevent a disposition of the collateral for less than its fair market value. *See, e.g., Gavin v. Washington Post Employees Federal Credit Union,* 397 A.2d 968, 971–72 (D.C.App.1979); *Herman Ford–Mercury, Inc. v. Betts,* 251 N.W.2d 492, 495–96 (Iowa 1977); and *Russell National Bank v. Smith,* 8 MIFFLIN CO. LEG.J. 75, 77–78 (Mifflin Co. Pa.C.P.1988). We note that the instant sale, of which the Debtors received no notice, yielded a figure which the parties have stipulated was $1,500.00 less than the fair and reasonable value of the vehicle.

Even more to the point is the observation that statutory damages such as are provided in § 9507(a) are fixed by the legislature as a means of encouraging strict compliance with that law and not allowing the party violating the law to be extricated by the difficult prospect of the victim's proving actual damages. *Cf. In re Russell,* 72 B.R. 855, 861–62 (Bankr.E.D.Pa.1987). In one respect, the Defendants are fortunate. The Debtors may have duplicated their recovery had they pressed for statutory damages for each of them, as they were each a "debtor" in the transaction. *Cf. Gambale v. Lomas & Nettleton Co.,* 80 B.R. 306, 310–11 (E.D.Pa.1987); and *In re Ashhurst,* 80 B.R. 49, (Bankr.E.D.Pa.1987). The Defendants, like the lender in *In re Tucker,* 74 B.R. 923, 933 (Bankr.E.D.Pa.1987), are thus the beneficiary of the modesty, at least in this respect, of the Debtors' demands.

We therefore have no hesitancy awarding the Debtors statutory damages of $14,289.03 on the claim set forth in Count III of their Complaint. However, as § 9507(a) renders the "secured party" alone liable for violations of § 9504(c), damages are awarded in this amount on this claim against Chase only.

## F. THE DEBTORS ARE ENTITLED TO MODEST DAMAGES ON THEIR MVSFA CLAIM

The Debtors, in Count IV of the Complaint, also seek damages for the Defendants' failure to provide the "notice of repossession" prescribed by 69 P.S. § 623 D (see page 695 n. 4 *supra* for the text of this law).

We believe that the Debtors have met their burden of establishing, by the requisite preponderance of the evidence, that none of the Defendants sent a "notice of repossession," as contemplated by § 623 D, to the Debtors. ALSC and MAI expressly admit that they sent no such notices. Chase hedges to some degree by stating that it has no record of having sent any such notice. *See* Stipulation of Facts, ¶ 18, page 693 *supra.* The parties agree that no notice was received by the Debtors. Since the repossession occurred only about one year ago, it is inconceivable to us that Chase would be unable to provide a positive statement that it did send a notice and produce a copy of same if it had actually dispatched such a notice. We therefore construe paragraph 18 of the parties' Stipulation of Facts as a tacit admission that, in fact, no written notice was dispatched to the Debtors by Chase in accordance with § 623 D.

Attempting to ascertain the Debtors' damages for this complete violation of § 623 D of the MVSFA exemplifies the wisdom of statutory damage provisions. There is, clearly, no statutory damage provision, or even a right to maintain a civil action for any violation of its provisions, which appears anywhere in the MVSFA. It is virtually impossible for the Debtors to establish that, but for the absence of the notice of repossession, they suffered a cer-

tain amount of damages. Clearly, no precise sum of the Debtors' damages emerges from the Stipulation of Facts which constitutes the record in this case.

We addressed the anomaly of absence of remedies in many of the Pennsylvania consumer protection statutes, including the MVSFA, in *Russell, supra,* 72 B.R. at 870–71. We pointed out there that, only by reference to 73 P.S. § 201–9.2(a) of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1, et seq. (referred to hereinafter by its generic designation as a statute punishing unfair or deceptive acts and practices, or "UDAP"), can any civil remedy for even the grossest violations of the MVSFA be framed. *Id.* at 871. We also held that any violation of these consumer protection laws, including the MVSFA, should constitute a violation of UDAP *per se. Id.*

■ Unlike the debtor in *Russell,* the Debtors here did not expressly invoke UDAP. Nevertheless, we shall utilize this statutory provision to impose at least some penalty for the Defendants' blatant failure to dispatch any "notice of repossession" to the Debtors. The pertinent UDAP provision, 73 P.S. § 201–9.2(a), entitles a victim of an unfair or deceptive practice to "actual damages or one hundred dollars ($100.00), whichever is greater." No actual damages having been proven, we shall award the Debtors what is in substance the statutory damage sum of $100.00 as a recovery for the violation of the MVSFA which transpired here. Since the "holder" of the MVSFA contract is alone responsible for providing this notice, and Chase alone fits this definition, 69 P.S. § 603(5), Chase is again alone liable for this sum.

## G. THE DEBTORS ARE NOT ENTITLED TO DAMAGES FOR THE DEFENDANTS' VIOLATION OF THE AUTOMATIC STAY

■ The Debtors argue vigorously that substantial additional damages should be imposed upon the Defendants as a recovery for their violations of the automatic stay in proceeding to sell their vehicle after their bankruptcy filing. To the extent that the Debtors argue that their estate retained an interest in the vehicle despite the running of the 15–day period after repossession, we agree. *See* pages 694–96 *supra.* We also agree that the post-petition sale of a vehicle repossessed pre-petition, without first obtaining relief from the stay is, indeed, a violation of the automatic stay under 11 U.S.C. §§ 362(a)(3), (a)(4), (a)(5), and (a)(6). *See In re Skinner,* 90 B.R. 470, 473–74 (D.Utah 1988); and *Willis, supra,* 34 B.R. at 453–54.

■ However, we do not believe that the Stipulation of Facts is totally clear in establishing, as the Debtors urge, that any of the Defendant were apprised of the Debtors' bankruptcy filing and hence that they violated the stay with knowledge that their actions constituted such a violation. The only paragraphs of the Stipulation of Facts supporting the contention that notice of the Debtors' filing was provided to any of the Defendants are paragraph 19, page 693 *supra,* wherein it is agreed that the Husband–Debtor spoke to agents of Chase in January, 1988, and paragraph 21, page 693 *supra,* where it is said that the Plaintiffs demanded that the vehicle be turned over "to the Trustee," which suggests the presence of a bankruptcy.[7] We believe that the Husband–Debtor, an attorney who

---

7. We cannot consider the statements in the Debtors' Brief, not supported by the Stipulation of Facts, that the Husband–Debtor informed Chase and ALSC of the bankruptcy filing in his January telephone conversation, nor the "assertion" in this Brief that the Husband–Debtor mailed a copy of the petition to Chase.

Unfortunately, both parties, through agreeing to be confined to the Stipulation as the record, appear reluctant to do so in their briefing. Thus, we receive a veritable self-serving autobiography of the Debtors in their Brief, including mention of a previous Chapter 7 filing in Flor-

ida in March, 1987, and protestations that, far from being a luxury item(!), the Porsche was a necessary transportation vehicle. Unable to resist the temptation to respond in kind, the Defendants' Brief is replete with detail of the parties' contacts absent from the Stipulation of FActs and assertions regarding the Debtors' prior bankruptcy and the suspension of the Husband–Debtor's driving privileges. We emphasize, as firmly as we can, that such efforts to inject matters not in the record are improper and reflect negatively on both counsel.

is a veteran of at least one prior bankruptcy case, see n. 7 *supra,* could have, should have, and therefore must document notices of the filing to interested parties with more care and precision if we are to conclude unequivocally such notice as given. We therefore question whether the Debtors have established that they notified any of the Defendants of their bankruptcy filing.

 The Defendants' lack of awareness of the bankruptcy filing does not alter the fact that violation of the automatic stay occurred. *See In re Boston Business Machines,* 87 B.R. 867, 870 (Bankr.E.D.Pa. 1988); and *In re Clark,* 69 B.R. 885, 887–89, *modified,* 71 B.R. 747 (Bankr.E.D.Pa. 1987). However, the intervention of good faith purchasers of the vehicle, as the Debtors concede, renders invalidation of the sale an impractical remedy. *Accord, Willis, supra,* 34 B.R. at 454. It is clear that lack of awareness of the bankruptcy filing impacts substantially upon the Defendants' liability, either under 11 U.S.C. § 362(h), *see Skinner, supra,* 90 B.R. at 473–75; *In re Whitt,* 79 B.R. 611, 615–16 (Bankr.E.D.Pa.1987); and *In re Wagner,* 74 B.R. 898, 902–05 (Bankr.E.D.Pa.1987), or for contempt of the court's automatic stay order. *See Skinner, supra,* 90 B.R. at 478–80; and *Wagner, supra,* 74 B.R. 902–05. *See also In re LaTempa,* 58 B.R. 538, 541–42 (Bankr.W.D.Va.1986) (innocent initial repossession may be transformed into conduct actionable under § 362(h) by retention of a repossessed vehicle after repossession is made aware of filing and fact that it rendered the initial repossession illegal). While we agree with the above holding in *LaTempa, see Boston Business Machines,* 87 B.R. at 870, and the statement in *Wagner* that "knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay," 74 B.R. at 904, *see Boston Business Machines,* 87 B.R. at 871, here we question the existence of knowledge of the bankruptcy filing at any time prior to the sale of the vehicle on the part of any of the Defendants.

Even if we found that the Defendants did have knowledge of the bankruptcy filing, which we could infer from the contents of paragraphs 19 and 21 as indicated *supra,* we would be unwilling to add to the substantial damages recoverable by the Debtors on this basis. The contents of the Stipulation of Facts fail to establish any damages resulting to the Debtors as a consequence of the stay violation, which can be fatal to a claim under § 362(h). *See Whitt, supra,* 79 B.R. at 615–16. Here, the Debtors are not trying to overturn the sale, which we would be unlikely to do in any event in light of the fact that the Debtors failed to invoke this court's powers before it occurred. It is clear that they had no equity in the vehicle at the time of the sale. Nor did they indicate an inclination to cure the defaults and pay off the balance on the vehicle in their Chapter 13 Plan, as did the debtors in the cases cited at page 695 *supra.*

Finally, in *Willis,* 34 B.R. at 455, the debtors were awarded damages for the post-petition sale of a vehicle by a secured creditor that clearly had knowledge of the bankruptcy filing, measured by reference to § 9507(a). Damages for that clearly intentional violation were hence measured there by damages which the Debtors here already will receive and in a total sum ($2,015.21) far less than that awarded to the Debtors here. The Debtors' equities are not such that we are inclined to award them double damages. For all of these reasons, we deny any relief to the Debtors pursuant to Count II of their Complaint.

## H. THE DEBTORS ARE NOT ENTITLED TO ANY OTHER DAMAGES, PUNITIVE OR OTHERWISE

 In an obvious overstatement of whatever equities are in their favor in this matter, the Debtors request punitive damages of eleven times their perceived compensatory damages of $14,289.03, or $157,-179.33.[8] Punitive damages are appropriately awarded when an element of aggra-

---

**8.** The Debtors recite the figure of $157,289.33 in their Brief. We assume that they made a slight

error in calculations.

vation to a victim of wrongdoing is accompanied by the malicious, oppressive motives of the wrongdoer; a breach of a fiduciary or special relationship; or a lack of provocation for the act in issue is established. *See In re Tigue*, 82 B.R. 724, 737 n. 3 (Bankr.E.D.Pa.1988). None of these elements appear present here. The Debtors were well in default prior to the repossession. They had no equity in the vehicle. They displayed no ability or inclination to redeem the Porsche despite being given a fairly extensive period after repossession and the potential of providing in their Chapter 13 Plan to do so. Thus, their conduct "provoked" the Defendants' actions. Although Chase failed rather badly in providing the requisite notices, there is no evidence of high-handed, callous, or inequitable conduct by any of the Defendants. Logical business motivations rather than personal enmity towards the Debtors appears to have characterized the Defendants' actions. No oppressive nor malicious motives appear. No special fiduciary relationship existed. There thus appears to be no basis for an award of punitive damages to the Debtors.

Moreover, Chase will be compelled to pay rather severely for its rather bad adherence to the requirements set forth in the applicable notice provisions. The liberality of this measure of damages renders an award of additional punitive damages inappropriate. *See Tigue, supra.*

### I. CONCLUSION

We therefore award the Debtors the sum of $14,389.03 against Chase only. As in, *e.g., Russell, supra,* we are awarding the Debtors a sum apparently in excess of their exemptions under 11 U.S.C. § 522(d), and therefore we shall order this sum to be paid to the Standing Chapter 13 Trustee. We also shall order the Debtors to amend their Schedules and Plan to take this influx of funds into their estate into account.

An appropriate Order will be entered.